FOR PUBLICATION

IN THE SUPREME COURT OF TENNESSEE

AT NASHVILLE

HEARD AT COOKEVILLE

**FILED**

**November 24, 1997**

**Cecil W. Crowson**
**Appellate Court Clerk**

| | | |
|---|---|---|
| STATE OF TENNESSEE, | ( | |
| | ( | |
| Plaintiff-Appellee, | ( | |
| | ( | Coffee Criminal |
| | ( | |
| v. | ( | Hon. Gerald L. Ewell, Sr., |
| | ( | Judge |
| | ( | |
| WAYNE LEE YEARGAN, | ( | No. 01S01-9604-CC-00080 |
| | ( | |
| Defendant-Appellant. | ( | |

**C O N C U R R I N G   I N   R E S U L T S**

I agree that the motion to suppress the evidence be denied. I write separately because the language of the majority opinion reduces the constitutional standard for search and seizure to "reasonable suspicion."[1] The majority misconstrues Terry v. Ohio, 392 U.S. 1, 88 S. Ct. 1868 (1968), the United States Supreme Court case which recognized the validity of investigative stops based on exigent circumstances, and ignores Whren v. United States, _____ U.S. _____, 116 S. Ct. 1769 (1996), the most recent United

---

[1] "Because the investigatory stop in this case was based upon reasonable suspicion, it was valid under both the federal and state constitutions." Majority Opinion at _____ [slip op. at 16]. Particularly alarming is the statement: "Indeed, the availability of less intrusive investigatory techniques does not vitiate the constitutional validity of a stop which is supported by reasonable suspicion." Id.

States Supreme Court case discussing the requirements for probable cause. The majority also fails to follow, or even mention, the holdings in <u>Hughes v. State</u>, 588 S.W.2d 296 (Tenn. 1979) and <u>State v. Pully</u>, 863 S.W.2d 29 (Tenn. 1993) in which this Court discussed in detail the rationale and requirements for an investigative stop.

# I

The appeal is from convictions of driving under the influence of an intoxicant, second offense,[2] and driving a motor vehicle with a revoked driver license,[3] entered upon the defendant's pleas of guilty, reserving a dispositive question of law.

On Thursday, January 28, 1993, at approximately 2:20 p.m., Tullahoma Police Officer Jason Ferrell observed the defendant, Wayne Lee Yeargan, driving a pickup truck on a public street in Tullahoma. Previously, Officer Ferrell had arrested the defendant for driving under the influence of an intoxicant and had been present in the general sessions court on July 2, 1992 when the defendant pleaded guilty to the offense and was sentenced to 11 months and 29 days in jail, a fine of $250, and the revocation of his driver license for one year from the date of the judgment.

---

[2]Tenn. Code Ann. § 55-10-401 (1993).

[3]Tenn. Code Ann. § 55-50-504 (1993).

When the officer began following the defendant's truck, the defendant, according to the officer's testimony, "sped up some, he wasn't going at a high rate of speed, but he accelerated." In the officer's view, the defendant "attempted to put some traffic between us." The defendant then drove into the parking lot of Ruby's Lounge, a local bar; the officer followed and put on his blue lights. The defendant parked and got out of his truck. The officer asked to see his driver license, and he produced a restricted license issued pursuant to a court order which permitted the defendant to drive "in Coffee County only as necessary to complete job tasks" between the hours of 7 a.m. and 7 p.m. The defendant's employment was listed on the order granting the restricted license as farming and "rental property owner." The officer testified that when he asked the defendant why he had driven to the bar, the defendant replied that he "had come to the bar to meet a guy about a cow." Based on his observations and a field sobriety test, the officer concluded that the defendant was under the influence of an intoxicant and arrested him for driving under the influence and driving on a revoked license. The police officer admitted that he was aware of the availability of restricted licenses for driving offenders. However, he testified that if he had tried to establish the status of the defendant's license before stopping him, it would have taken approximately 15 minutes for the police radio operator to determine whether the defendant had a restricted license.

The Court of Criminal Appeals found that "a prudent

officer could reasonably have believed that the appellant was driving on a revoked license" and held that the officer had "probable cause to conduct an investigative stop."  In reaching that conclusion, the Court of Criminal Appeals relied upon Terry v. Ohio, 392 U.S. 1, 88 S. Ct. 1868 (1968) and State v. Watkins, 827 S.W.2d 293 (Tenn. 1992).

## II

This Court recently clarified the standard of review under which a trial court's findings of fact on suppression issues are to be reviewed:

> Questions of credibility of the witnesses, the weight and value of the evidence, and resolution of conflicts in the evidence are matters entrusted to the trial judge as the trier of fact.  The party prevailing in the trial court is entitled to the strongest legitimate view of the evidence adduced at the suppression hearing as well as all reasonable and legitimate inferences that may be drawn from that evidence.  So long as the greater weight of the evidence supports the trial court's findings, those findings shall be upheld.  In other words, a trial court's findings of fact in a suppression hearing will be upheld unless the evidence preponderates otherwise.  We also note that this standard of review is consistent with Tenn. R. App. P. 13(d), which provides that in civil cases, findings of fact by a trial court are presumed correct "unless the preponderance of the evidence is otherwise."  Hereafter, the proper standard to be applied in reviewing suppression issues is the "preponderance of the evidence" standard.

State v. Odom, 928 S.W.2d 18, 23 (Tenn. 1996).  The application of

-4-

the law to the facts found by the trial court, however, is a question of law which this Court reviews de novo. Beare Co. v. Tennessee Dept. of Revenue, 858 S.W.2d 906, 907 (Tenn. 1993).

III

A.

The relevant constitutional provisions are the Fourth Amendment to the United States Constitution and Article 1, Section 7, of the Tennessee Constitution.[4] The Fourth Amendment "exists, primarily, for the benefit of the citizen; its origin and history clearly manifest that the Fourth Amendment was intended as a restraint upon the activities of the sovereign authority to the

---

[4]The Fourth Amendment states,

> **Unreasonable searches and seizures. -** The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. Const. amend. IV. The Fourth Amendment is applicable to the states through the Fourteenth Amendment. Mapp v. Ohio, 367 U.S. 643, 655, 81 S. Ct. 1684, 1691 (1961).

Article 1, Section 7 of the Tennessee Constitution states,

> **Unreasonable searches and seizures - General warrants. -** That the people shall be secure in their persons, houses, papers and possessions, from unreasonable searches and seizures; and that general warrants, whereby an officer may be commanded to search suspected places, without evidence of the fact committed, or to seize any person or persons not named, whose offences are not particularly described and supported by evidence, are dangerous to liberty and ought not to be granted.

Tenn. Const. art. I, § 7.

extent that a citizen may be secure in the unmolested enjoyment of home and possessions, except by virtue of process duly issued." State v. Burroughs, 926 S.W.2d 243, 245 (Tenn. 1996). The Court recently reaffirmed this historic principle:

> [B]oth the Fourth Amendment to the United States Constitution and Article 1, Section 7 of the Tennessee Constitution prohibit "unreasonable" searches and seizures. The State may not invade this personal constitutional right of the individual citizen except under the most exigent circumstances.
>
> . . .
>
> A warrantless search and seizure, therefore, is presumed unreasonable unless it falls into one of the narrowly defined exceptions, or exigent circumstances, to the warrant requirement. The mere existence of these circumstances does not necessarily validate a warrantless search. As pointed out in [United States v. Nelson, 459 F.2d 884, 885 (6th Cir. 1972)], exceptions are jealously and carefully drawn." There must be a showing by those asserting the exception that the exigencies of the situation made the search imperative. The burden is on those seeking the exception to show the need.

State v. Bartram, 925 S.W.2d 227, 229-30 (Tenn. 1996) (citations omitted).

The stop of the defendant's vehicle in this case implicates the protection of both the state and federal constitutions: "Temporary detention of individuals during the stop of an automobile by the police, even if only for a brief period and for a limited purpose, constitutes a 'seizure' of 'persons' within the meaning of this provision." Whren v. United States, ___ U.S.

_____,___, 116 S. Ct. 1769, 1772 (1996); Delaware v. Prouse, 440 U.S. 648, 654, 99 S. Ct. 1391, 1396 (1979).

> When an officer turns on his blue lights, he or she has clearly initiated a stop. See United States v. Hensley, 469 U.S. 221, 226, 105 S. Ct. 675, 679, 83 L.Ed.2d 604 (1985); Colorado v. Bannister, 449 U.S. 1,4 n. 3, 101 S. Ct. 42, 44 n. 3, 66 L.Ed.2d 1 (1980). Moreover, as the United States Supreme Court observed in Terry v. Ohio, 392 U.S. 1, 16, 88 S. Ct. 1868, 1877, 20 L.Ed.2d 889 (1968), "[i]t must be recognized that whenever a police officer accosts an individual and restrains his freedom to walk away, he has 'seized' that person." See also United States v. Brignoni-Ponce, 422 U.S. 873, 878, 95 S. Ct. 2574, 2578, 45 L.Ed.2d 607 (1975).

State v. Pully,[5] 863 S.W.2d 29, 30 (Tenn. 1993). "An automobile stop is thus subject to the constitutional imperative that it not be 'unreasonable' under the circumstances." Whren v. United States, ___ U.S. at ___, 116 S. Ct. at 1772; see State v. Downey, 945 S.W.2d 102, 106 (Tenn. 1997).

The Fourth Amendment and Article I, Section 7 require the existence of "probable cause" for making an arrest without an arrest warrant. Beck v. Ohio, 379 U.S. 89, 85 S. Ct. 223, 225 (1964); State v. Melson, 638 S.W.2d 342, 350 (Tenn. 1982), cert. denied, 459 U.S. 1137, 103 S. Ct. 770 (1983). In order to have probable cause for an arrest without a warrant, at the moment of the arrest, the facts and circumstances within the knowledge of the

---

[5]The correct spelling of the defendant's name is "Pulley"; however, it is cited by West Publishing Company as "Pully."

officers, and of which they had reasonably trustworthy information, must be "sufficient to warrant a prudent man in believing that the [defendant] had committed or was committing an offense." Beck v. Ohio, 379 U.S. at 91, 85 S. Ct. at 225; Melson, 638 S.W.2d at 350.

Although probable cause is the only basis on which a person may be arrested without a warrant, under certain circumstances, a person may be detained briefly by a police officer without a warrant or probable cause. Under exigent circumstances, "a police officer may make an investigative stop of a motor vehicle when the officer has a reasonable suspicion, supported by specific and articulable facts, that a criminal offense has been or is about to be committed." State v. Watkins, 827 S.W.2d 293, 294 (Tenn. 1992); see also Terry v. Ohio, 392 U.S. 1, 21, 88 S. Ct. 1868, 1880 (1968)).

The motion to suppress is directed to evidence of the defendant's intoxication, which was apparent to the officer upon observing his appearance and demeanor, consequently, the admissibility of the evidence depends entirely upon the legality of the stop. The stop was permissible and the evidence admissible if there was probable cause for an arrest or if there were grounds for an investigative stop.

Two distinct but closely related issues, both governed by the Fourth Amendment and Art. I, Section 7, are presented in this case. The facts and circumstances of the case must be

examined first to determine if they constitute grounds justifying the defendant's arrest.  If the facts and circumstances do not warrant the reasonable belief that a crime has been or is being committed and, therefore, there is no probable cause for arrest, then secondly, those facts and circumstances may be examined to determine if they permit an investigative stop.

B.

Although the determination of probable cause turns on the facts and circumstances of each case, the framework within which that determination is made is well settled.  Significant aspects of that framework are set forth in the following material in 2 Wayne R. LaFave, Search and Seizure § 3.1(b), pp. 6, and § 3.2, p. 22 (3d ed. 1996):

> It is generally assumed by the Supreme Court and the lower courts that the same quantum of evidence is required whether one is concerned with probable cause to arrest or probable cause to search.  For this reason, discussions by courts of the probable cause requirement often refer to and rely upon prior decisions without regard to whether these earlier cases were concerned with the grounds to arrest or the grounds to search. . . .
>
> . . . .
>
> Notwithstanding the frequency with which police, lawyers and judges must decide whether a given set of facts amounts to probable cause, it remains "an exceedingly difficult concept to objectify."  As noted in United States v. Davis:
>
> > The contours and salient principles of probable cause have been

faithfully catalogued in a surfeit of decisional law. Probable cause exists when known facts and circumstances are sufficient to warrant a man of reasonable prudence in the belief that an offense has been or is being committed. . . . A significantly lower quanta of proof is required to establish probable cause than guilt. . . . Probable cause does not emanate from an antiseptic courtroom, a sterile library or a sacrosanct adytum, nor is it a pristine "philosophical concept existing in a vacuum," . . . but rather it requires a pragmatic analysis of "everyday life on which reasonable and prudent men, not legal technicians, act." . . . It is to be viewed from the vantage point of a prudent, reasonable, cautious police officer on the scene at the time of the arrest guided by his experience and training. . . . It is "a plastic concept whose existence depends on the facts and circumstances of the particular case." . . . Because of the kaleidoscopic myriad that goes into the probable cause mix "seldom does a decision in one case handily dispose of the next." . . . It is however the totality of these facts and circumstances which is the relevant consideration. . . . Viewed singly these factors may not be dispositive, yet when viewed in unison the puzzle may fit.

The most recent decision by this Court considering probable cause to arrest is State v. Melson, 638 S.W.2d 342 (Tenn. 1982), cert. denied, 459 U.S. 1137, 103 S. Ct. 770 (1982). In that case, the Court found that the information given to police officers immediately after the homicide was committed, the defendant's presence nearby, and the blood spots on the defendant's clothing, constituted probable cause for the defendant's seizure and arrest,

stating,

> Since there was no warrant, we must pass upon the validity of the arrest under the statute permitting an officer to make a warrantless arrest when a felony has been committed and he has reasonable or probable cause to believe that the arrestee committed the felony. Tenn. Code Ann. § 40-803(3). It is conceded that probable cause must be more than mere suspicion, West v. State, 221 Tenn. 178, 425 S.W.2d 602 (1968), but neither must it be absolute certainty, Grey v. State, 542 S.W.2d 102 (Tenn. Cr. App. 1976). Reasonable or probable cause consists of grounds which would lead a reasonable man to believe that the person arrested was guilty of the felony, Davis v. State, 2 Tenn. Cr. App. 297, 453 S.W.2d 438 (1969). In Davis, we quoted from Jones v. State, 161 Tenn. 370, 33 S.W.2d 59 (1930), wherein it was stated:

>> "In Beck v. State of Ohio, 379 U.S. 89, 85 S. Ct. 223, 13 L.Ed.2d 142 (1964), the [United States Supreme] Court stated:

>>> 'Whether that arrest was constitutionally valid depends . . . upon whether, at the moment the arrest was made, the officers had probable cause to make it--whether at that moment the facts and circumstances within their knowledge and of which they had reasonable trustworthy information were sufficient to warrant a prudent man in believing that the petitioner had committed . . . an offense.'"

> 453 S.W.2d at 440.

Id. at 350-51. Thus, probable cause is established when the facts and circumstances within the knowledge of the officer and of which he has reasonably trustworthy information  warrant a prudent person in believing the defendant has committed or is committing an

offense.

The Supreme Court of the United States recently emphasized that where there is probable cause, the "reasonableness" of the search and seizure required by the Fourth Amendment is established. In Whren v. United States, _____ U.S. _____, 116 S. Ct. 1769 (1996), police officers observed the defendant violating several traffic ordinances. They pursued the defendant's vehicle and an officer approached the vehicle while it was stopped at a traffic light. The officer, who was not in uniform, identified himself to the defendant as a police officer and directed the defendant to put the vehicle in park. The officer saw the defendant openly holding contraband in his hands. The defendant in Whren pressed the Supreme Court to suppress the evidence obtained on the ground that the stop was pretextual. The defendant insisted that the officer used the traffic violations as a pretext for stopping the defendant when his real purpose was to find evidence of illegal drug activity. Instead, the Court held that the ulterior motives of the officer do not invalidate police conduct that is justified on the basis of probable cause.

> It is of course true that in principle
> every Fourth Amendment case, since it turns
> upon a "reasonableness" determination,
> involves a balancing of all relevant factors.
> With rare exceptions not applicable here,
> however, the result of that balancing is not
> in doubt where the search or seizure is based
> upon probable cause. That is why petitioners
> must rely upon cases like Prouse to provide
> examples of actual "balancing" analysis.
> There, the police action in question was a
> random traffic stop for the purpose of

> checking a motorist's license and vehicle registration, a practice that ... involves police intrusion <u>without the probable cause that is its traditional justification</u>.

<u>Id.</u> at _____, 116 S. Ct. at 1776 (1996) (emphasis in original). <u>See</u> <u>also</u> <u>Ohio v. Robinette</u>, ____ U.S. ____, ____, 117 S. Ct. 417, 420-21 (1996). The Supreme Court did not specifically discuss investigative stops authorized by <u>Terry</u> and its progeny, but its holding validates, under federal law, all detentions authorized by probable cause.

> Where probable cause has existed, the only cases in which we have found it necessary actually to perform the "balancing" analysis involved searches or seizures conducted in an extraordinary manner, unusually harmful to an individual's privacy or even physical interests - such as, for example, seizure by means of deadly force .... The making of a traffic stop out-of-uniform does not remotely qualify as such an extreme practice, and so is governed by the usual rule that probable cause to believe the law has been broken "outbalances" private interest in avoiding police contact.

<u>Whren v. United States</u>, _____ U.S. at _____, 116 S. Ct. at 1776-77. Consequently, a balancing analysis under <u>Terry</u> is not necessary where there is probable cause.

C.

However, as recognized in <u>Whren</u>, the most recent decision by the United States Supreme Court on this issue, where there is no probable cause there must be "detailed 'balancing' to

decide the constitutionality of automobile stops" involving sufficient, specific, identified facts in order to justify even a limited intrusion.[6]  Id. at _____, 116 S. Ct. at 1776.

The validity of an investigative stop under exigent circumstances was first recognized by the United States Supreme Court in Terry v. Ohio.  In that case, the Court addressed the issue of whether the police have the right to stop and question an individual in the absence of probable cause.  In Terry, a policeman became suspicious of two men who separately walked up and down a street several times peering into a store, talked to a third man and followed him up the street a short time later.  A police officer followed the suspects, confronted and searched them, and found a pistol on two of them.  Terry, charged with the crime of carrying a concealed weapon, moved to suppress the weapon as evidence.  The Court held:

> Each case of this sort will, of course, have
> to be decided on its own facts.  We merely
> hold today that where a police officer
> observes unusual conduct which leads him
> reasonably to conclude in light of his
> experience that criminal activity may be afoot
> and that the persons with whom he is dealing
> may be armed and presently dangerous, where in
> the course of investigating this behavior he
> identifies himself as a policeman and makes
> reasonable inquiries, and where nothing in the

---

[6]The majority states that Whren does not support the proposition that balancing is necessary in the absence of probable cause where a reasonable suspicion is present.  See Majority Opinion at _____.  [Slip op. at 8, n. 8].  Whren specifically states, "What is true of Prouse is also true of other cases that engaged in detailed "balancing" to decide the constitutionality of automobile stops, . . . the detailed "balancing" analysis was necessary because they involved seizures without probable cause."  Id. at _____, 116 S. Ct. at 1776.

-14-

initial stages of the encounter serves to dispel his reasonable fear for his own or others' safety, he is entitled for the protection of himself and others in the area to conduct a carefully limited search of the outer clothing of such persons in an attempt to discover weapons which might be used to assault him.

Terry v. State of Ohio, 392 U.S. at 30, 88 S. Ct. at 1884-85.

The majority opinion states that Terry requires only a reasonable suspicion supported by specific and articulated facts that a criminal offense has been or is about to be committed. However, Terry specifically limited its holding to allow a stop where the officer has not only a reasonable suspicion that "criminal activity may be afoot," but also a reasonable suspicion that the persons "may be armed and presently dangerous," and to allow a search where after reasonable inquiries, nothing "serves to dispel his reasonable fear for his own or others' safety." Terry v. State of Ohio, 392 U.S. at 30, 88 S. Ct. at 1884-85. The requirement of exigent circumstances is not included in the rule announced by the majority.

Subsequent decisions have reaffirmed the holding in Terry that investigative stops are limited to extraordinary situations. In Delaware v. Prouse, the Supreme Court found the stop to be constitutionally unreasonable. The Court held that a stop to check a license and registration is unreasonable "except in those situations in which there is at least articulable and reasonable suspicion that a motorist is unlicensed or that an automobile is not registered, or that either the vehicle or an

-15-

occupant is otherwise subject to seizure for violation of law."[7] Delaware v. Prouse, 440 U.S. 648, 664, 99 S. Ct. 1391, 1401 (1979). In Delaware v. Prouse, a police officer stopped an automobile though "he had observed neither traffic or equipment violations nor any suspicious activity." Id. at 651, 99 S. Ct. at 1394. The stop was made solely to check the driver's license and registration because the officer "saw the car in the area and wasn't answering any complaints ...." Id. Upon approaching the vehicle, the officer smelled marijuana, and seized marijuana in plain view on the floor of the car. The Court suppressed this evidence because there was no reasonable basis for the stop.

The majority relies on Prouse to support its position. In Prouse, the Court first discussed United States v. Brignoni-Ponce, 422 U.S. 873, 95 S. Ct. 2574 (1975) and United States v. Martinez-Fuerte, 428 U.S. 543, 96 S. Ct. 3074 (1976), where the Court upheld checkpoint stops and disallowed roving patrol stops. These determinations were based on the exigent circumstances surrounding illegal aliens. Prouse, 440 U.S. at 656, 99 S. Ct. at 1397. The Prouse Court found that in the case of other random stops which were not based on any suspicion of a violation of the law, no interests (or exigent circumstances) existed to justify the intrusion. The majority interprets the holding to support the conclusion that in the presence of a reasonable suspicion, a stop

---

[7]See also Tenn. Code Ann. §40-7-103 (Supp.1996)(setting forth grounds for arrest by an officer without a warrant). The issue of whether section 40-7-103 was complied with in this case is not before the Court.

-16-

is always constitutional. <u>See</u> Majority Opinion _____ [slip op. at 11]. Such an interpretation is inconsistent with the language in <u>Prouse</u> specifically limiting its holding: "We hold only that persons in automobiles on public roadways may not for that reason alone have their travel and privacy interfered with at the unbridled discretion of police officers." <u>Id</u>. at 664, 99 S. Ct. at 1401.[8]

Guidance as to the circumstances in which an investigative stop is justified is found in Justice Jackson's dissent in <u>Brinegar v. United States</u>, 338 U.S. 160, 183, 69 S. Ct. 1302, 1314 (1949):

> If we assume, for example, that a child is kidnapped and the officers throw a roadblock about the neighborhood and search every outgoing car, it would be a drastic and undiscriminating use of the search. The officers might be unable to show probable cause for searching any particular car. However, I should candidly strive hard to sustain such an action .... But I should not strain to sustain such a roadblock and universal search to salvage a few bottles of bourbon and catch a bootlegger.

In balancing public and private interests, exigent circumstances are necessary to justify the intrusion. The <u>Terry</u> decision as developed by other cases which have allowed short term

---

[8]Nor do the cases of <u>Michigan v. Sitz</u> or <u>State v. Downey</u>, holding constitutional sobriety checkpoints, support the majority's position. In both of those cases, the Court vividly illustrates the exigent circumstances surrounding the drunken driving problem which prompted the decisions. <u>Michigan Dept. of State Police v. Sitz</u>, 496 U.S. 455, 451, 110 S. Ct. 2481, 2485-86 (1990); <u>State v. Downey</u>, 945 S.W.2d 102, 104 (Tenn. 1997).

seizures without a probable cause for arrest, created a balancing

analysis which has been summarized by this Court as follows:

> In general, although the Fourth Amendment requires "probable cause" before an arrest is deemed to be reasonable, the reasonableness of seizures less intrusive than a full-scale arrest is judged by weighing the gravity of the public concern, the degree to which the seizure advances that concern, and the severity of the intrusion into individual privacy. See, e.g., Brown v. Texas, 443 U.S. 47, 50, 99 S. Ct. 2637, 2640, 61 L.Ed.2d 357 (1979). In Terry v. Ohio, 392 U.S. at 20-21, 88 S. Ct. at 1879-80, the United States Supreme Court acknowledged police officers' need for "an escalating set of flexible responses, graduated in relation to the amount of information they possess." Id. at 10, 88 S. Ct. at 1874. The Terry Court held that to justify a stop, "the police officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." Id. at 21, 88 S. Ct. at 1880.

State v. Pully, 863 S.W.2d at 30.

This Court has, in several decisions, addressed the

constitutional validity of investigative stops. In Hughes v.

State, 588 S.W.2d 296, 309 (Tenn. 1979), after reviewing the United

States Supreme Court decisions on investigative stops, the Court

stated:

> A citizen has a constitutionally ordered right to be secure in his person and possessions and to be free from "arbitrary invasions solely at the unfettered discretion" of the police.

In that case, the defendant and a companion drove to a store, the defendant dropped off his companion at the store and left. The companion bought some snacks which he consumed while reading magazines at the magazine rack. The proprietor contacted the police, related these facts and concluded that the defendant was "acting a little strange or suspicious." Id. at 299. When officers arrived at the store, they restrained the companion in the rear seat of the patrol car while it was determined that he had no criminal record. The officers began searching for the defendant, who was then returning to the store parking lot. The defendant rolled down the window when an officer approached the automobile and asked for his driver license. Because the officer smelled burning marijuana when the window was lowered, the officer searched the automobile and discovered the contraband. In Hughes, the Court held that the seizure was not based on information which contained "specific and articulable facts or inferences from facts, sufficient to generate a reasonable conclusion that a crime had been, was, or was about to be committed." Id. at 308.

In State v. Watkins, 827 S.W.2d 293, 294 (Tenn. 1992), the officer, who had made an investigative stop, testified at the suppression hearing that he had personal knowledge that a capias was outstanding for the defendant's arrest, that other police officers had informed him that the defendant often drove a black Cadillac inscribed with the words "The Duke," and that when he saw this car, because of the outstanding capias, the officers stopped the vehicle. This Court found that the police officers had the

-19-

required reasonable suspicion, supported by specific and articulable facts, to withstand the constitutional challenge to the stop. Id. at 295. The Court stated that,

> In determining whether a police officer's
> reasonable suspicion is supported by specific
> and articulable facts, a court must consider
> the totality of the circumstances United
> States v. Cortez, 449 U.S. 411, 417, 101
> S. Ct. 690, 695, 66 L.Ed.2d 621, 629 (1981).
> This includes, but is not limited to,
> objective observations, information obtained
> from other police officers or agencies,
> information obtained from citizens, and the
> pattern of operation of certain offenders.
> Id., 449 U.S. at 418, 101 S. Ct. at 695, 66
> L.Ed.2d at 629. A court must also consider
> the rational inferences and deductions that a
> trained police officer may draw from the facts
> and circumstances known to him. Terry, 392
> U.S. at 21, 88 S. Ct. at 1880, 20 L.Ed.2d at
> 906.

Id. at 294.[9]

In State v. Pully, 863 S.W.2d 29 (Tenn. 1993), the officer received an anonymous radio report that the defendant was in a yellow Ford in a trailer park, was armed with a shotgun, and was "supposed to shoot someone." Id. On the way to the trailer park, the officer received another similar report. The officer did not find the defendant at the trailer park; he then drove to a gas station where the defendant was parked in a yellow Ford. The officer turned on his blue lights, asked the defendant to get out

---

[9]Although the charge on which the capias had issued for Watkins is not stated in the opinion, it apparently was a major factor on which the Court relied in finding the stop justified. Even though the stop which resulted in the defendant's arrest was sustained as an investigative stop, the facts and circumstances also would support a finding of probable cause, which issue was not discussed in the opinion.

of the car, and saw a shotgun on the front floorboard of the car. He arrested the defendant for driving on a revoked license, for a second offense of driving under the influence of alcohol, and for possessing a loaded weapon, a hunting knife, and a billy club. The trial court suppressed the weapons and the results of the blood/alcohol test on the grounds that the officer had no reasonable suspicion that the defendant had or would commit a crime. This Court reversed that decision, analyzing the tests for determining the reliability of informants' tips in the context of "probable cause" determinations, and stating,

> In this case, the public interest served by the stop was the prevention of violent crime. The scope of the intrusion was minor; it was intended to be only a temporary stop of the defendant's car. Finally, the "indicia of reliability" were sufficient in light of these other considerations to warrant a brief investigatory stop. .... Although the reliability of the tip would certainly not establish probable cause to search or arrest, and would not furnish reasonable suspicion to stop the defendant in all circumstances, we conclude that, given the threat of violence, the police had "specific and articulable facts" to warrant the investigatory stop in this case.

Id. at 34.

This Court recently balanced public interest against private rights in deciding that sobriety roadblocks do not per se violate the Fourth Amendment or Article I, Section 7. The Court stated:

-21-

> In order for us to determine whether a seizure which is less intrusive than a traditional arrest is reasonable, we must balance the public interest served by the seizure with the severity of the interference with individual liberty.

State v. Downey, 945 S.W.2d 102, 104 (Tenn. 1997).

Recognition that an investigative stop may be constitutionally reasonable, even though an arrest would not be constitutionally reasonable, was not intended to be a relaxation of constitutional protection against intrusions by the State. See Minnesota v. Dickerson, 508 U.S. 366, 374, 113 S. Ct. 2130, 2136 (1993); Adams v. Williams, 407 U.S. 143, 146, 92 S. Ct. 1921, 1923 (1972). Instead, it is a recognition that a limited intrusion under exigent circumstances may be justified as constitutionally reasonable. Two essential conditions characterize a valid investigative stop, exigent circumstances and limited intrusion. After reviewing decisions from other jurisdictions in which investigative stops were found to be justified, the Court in Pully stated: "These cases show that the gravity of the perceived harm is a crucial element in assessing the reasonableness of an investigative Terry stop." Pully, 863 S.W.2d at 33. The Court then approved this statement from a concurring opinion in United States v. Mendenhall , 446 U.S. 544, 561, 100 S. Ct. 1870, 1881 (1980) (Powell, J., concurring):

> The reasonableness of a stop turns on the facts and circumstances of each case. In particular, the Court has emphasized (i) the

-22-

> public interest served by the seizure, (ii)
> the nature and scope of the intrusion, and
> (iii) the objective facts upon which the law
> enforcement officer relied in light of his
> knowledge and experience.

State v. Pully, 863 S.W.2d at 34.

The burden is on the State to show that exigent circumstances make the search imperative. State v. Bartram, 925 S.W.2d 227, 230 (Tenn. 1996); State v. Watkins, 827 S.W.2d 293, 295 (Tenn. 1992).

D.

As stated previously, the record will be examined first to determine if there was probable cause to arrest the defendant in this case. The facts and circumstances show that Officer Ferrell had probable cause to believe that the defendant was violating the law. Initially, the officer's knowledge that the defendant's driver license had been revoked for a year was not reasonable cause to believe that the defendant was committing an offense. Since he also knew that restricted licenses were available for business purposes, his observation of the defendant, who was a farmer, driving a pickup truck during working hours, would reasonably support nothing more than a suspicion that the defendant was driving without authority. Stated another way, he did not have reasonable cause to believe the defendant had not applied for or had been denied a restricted license. However, the officer knew

that a restricted license would not authorize a farmer to drive to a bar. The defendant's furtive driving behavior and his stopping at the bar were sufficient to elevate suspicion to probable cause. Had the defendant not been in violation of the restricted license by driving while drinking intoxicants, there was no obvious reason to avoid Officer Ferrell. Also, had the defendant been about his business purposes, he would not have violated the restricted license by stopping at a bar. These facts and circumstances were sufficient to support a finding of probable cause justifying the stop and the subsequent arrest.

E.

Even though Officer Ferrell had probable cause to stop the defendant's vehicle, it should be observed that the stop would fail the balancing test that must be applied to the facts and circumstances where there is reliance on an investigative stop. As stated in Hughes v. State, 588 S.W.2d at 303:

> Thus, in the context of a "stop and frisk" situation, the Court freed Fourth Amendment analysis from the rigidity of the probable cause standard but in so doing it imposed a standard of specific and articulable facts. The detection and prevention of crime and the safety of the officer are balanced against the nature and extent of and the reasons for the intrusion.

The decisions require an articulable and reasonable suspicion that the vehicle or the occupant is subject to seizure for a violation

of the law, and, further, "'that a seizure must be based on specific, objective facts indicating that society's legitimate interests require the seizure of the particular individual." Id. at 307 (quoting Brown v. Texas, 443 U.S. 47, 52, 99 S. Ct. 2637, 2640 (1979)). The facts and circumstances of this case support the first requirement, reasonable suspicion (and even probable cause). However, those facts and circumstances do not show exigent circumstances requiring that the defendant be seized. Officer Ferrell had no basis on which to suspect that the defendant was intoxicated. The defendant was not speeding, nor was he, to the officer's observation, violating any traffic regulations. His observable operation of the vehicle posed no danger to the public. The only suspected violation was driving on a revoked license. The public's interest in enforcing the law could as well have been protected by checking the records regarding the status of the defendant's license and procuring a warrant for his arrest or making an accusation to the grand jury. The purpose of the stop was not limited to insuring the officer's safety or the protection of the public. In contrast to this situation, the exigent circumstance in Pully was that the officer had reliable information that the defendant was in possession of a shotgun and "was supposed to shoot someone." Pully, 863 S.W.2d at 29. The cases relied upon in Pully to justify the stop involved situations where the officer reasonably suspected that the person stopped was in the possession of a concealed weapon, or items taken from the victim of a recent

murder.  <u>Pully</u>, 863 S.W.2d at 33-34.[10]  Consequently, the evidence does not support a finding of exigent circumstances.

The majority states that a brief investigatory stop is constitutionally permissible if the officer has a reasonable suspicion, supported by specific and articulable facts, that a criminal offense has been or is about to be committed.  Majority Opinion at _____ [slip op. at 14].  As a practical matter, the language of the majority would allow the detention and at least a patdown search of any person suspected of possessing illegal drugs or other contraband.  The majority, then, would eliminate the need for exigent circumstances and allow officers to proceed only on "reasonable suspicion," only.  The language of the majority would allow detention upon mere suspicion.  <u>See</u> <u>Minnesota v. Dickerson</u>, 508 U.S. 366, 381, 113 S. Ct. 2130, 2140 (1993).  Such an interpretation of the law contradicts the consistent holdings under <u>Terry</u> and this Court that each case must be decided on its own facts and that the "exigencies of the situation [must make] the search imperative."  <u>State v. Bartram</u>, 925 S.W.2d 227, 229-30 (Tenn. 1996); <u>Terry</u>, 392 U.S. at 30, 88 S. Ct. at 1884.

**IV**

The conclusion is that because the officer had probable cause to arrest the defendant, I agree that the motion to suppress

---

[10]For additional decisions based on exigent circumstances, <u>see</u> 4 <u>Wharton's Criminal Evidence</u> § 717, p. 826 (14th ed. 1987).

should be denied.

_____
Reid, J.