IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
May 2, 2006 Session

## STATE OF TENNESSEE v. BERNARD M. WALLACE

**Direct Appeal from the Circuit Court for Hardin County**
**No. 8392      C. Creed McGinley, Judge**

---

**No. W2005-01927-CCA-R3-CD  - Filed November 1, 2006**

---

Following a jury trial, Defendant, Bernard M. Wallace, was convicted of possession of cocaine over point five (0.5) grams with intent to sell, a Class B felony, and possession of marijuana, a Class A misdemeanor.  Defendant was sentenced to serve twenty-five years in the Department of Correction for the Class B felony, and eleven months and twenty-nine days for the Class A misdemeanor, to be served concurrently.  In this appeal, Defendant argues that (1) the trial court erred in denying his motion to suppress the evidence obtained as a result of the search of a motel room; (2) the evidence was insufficient to support his convictions; (3) the trial court improperly applied the enhancement factors in determining the length of Defendant's sentence.  After a thorough review, the judgments of the trial court are affirmed.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court Affirmed**

THOMAS T. WOODALL, J., delivered the opinion of the court, in which JOHN EVERETT WILLIAMS and J.C. MCLIN, JJ joined.

James N. Adams, Jr. and Jake Adams, Selmer, Tennessee, for the appellant, Bernard M. Wallace.

Paul G. Summers, Attorney General and Reporter; Rachel E. Willis, Assistant Attorney General; G. Robert "Gus" Radford, District Attorney General; and John W. Overton, Assistant District Attorney General, for the appellee, the State of Tennessee.

**OPINION**

**I. Background**

On August 9, 2004, at approximately 12:30 a.m., Officer Brian Rich of the Savannah Police Department was on routine patrol in Savannah.  While passing by the Savannah Motel, Officer Rich saw a person jump behind the fence adjacent to the motel in order to hide from him.  Officer Rich approached and asked the individual to step out from behind the fence.  The individual told Officer Rich her name was Jennifer Arnold and that she was staying in room thirty-two at the motel.

Deputy White arrived to assist Officer Rich, and together they approached room thirty-two to determine whether Ms. Arnold was staying in the room. As they got closer to the room, the door to the room was opened and the officers "smelled a strong smell of marijuana." There were four other individuals in the room who verified Ms. Arnold's identity and the fact that she was staying in the room. Those individuals were later identified as Crystal Bennett and Jonathan Bennett, Bernard Wallace, and Johnny Porter. Although Ms. Arnold originally led the officers to believe she had rented the room, documentation in the motel's office indicated the room had been rented by Ashley Morris. Ms. Morris was not present in the room when the officers arrived. The officers asked Ms. Arnold for permission to search the room and she agreed to allow them to search.

Acting on this consent, the officers began an "overview search." Officer Rich saw paraphernalia in plain view and felt that there were drugs in the room. Specifically, he saw "Brillo pads and maybe a piece of pipe or something like that," which he identified as paraphernalia used to smoke crack cocaine. Officer White likewise recognized the items as paraphernalia used to smoke crack cocaine. As the search continued, Officer White found "eight point nine ( 8.9) grams of rock substance base crack cocaine" and "thirty-one grams of marijuana . . . in the couch and behind the cushion, stuck down in the couch." The rock cocaine substance and the marijuana were bagged separately in two bags. Based on his experience, Officer White knew that such a large amount of crack cocaine and marijuana were typically associated with a dealer rather than an individual user.

At trial, Jennifer Arnold testified that on August 9, 2004, she was sitting outside of the Savannah Motel when she was approached by Officer Rich. She told Officer Rich that she was staying with some friends in room thirty-two at the motel and she was outside "getting a breath of fresh air." She said that Defendant had invited her to the room to "associate" and "get high." She agreed to come to the motel room and to drive Defendant to pick up some drugs. Once she arrived at the motel, Defendant never brought up the subject of going to pick up the drugs.

When Ms. Arnold arrived at the motel on the night of the incident, Ashley Morris and Johnny Porter were already in the motel room "getting high." Defendant arrived at the room shortly after Ms. Arnold. Ricky Hutton was the next to arrive. Mr. Hutton gave Defendant cash for the purchase of an "eight ball" or twenty-eight grams of crack cocaine. After making his purchase, Mr. Hutton and Ashley Morris left the motel room. Following their departure, Crystal Bennett and Jonathan Bennett arrived at the motel room.

According to Ms. Arnold, Johnny Porter left the motel room at some point during the evening to sell an eighty ($80.00) dollar piece of crack cocaine to a man named Nebo. Ms. Arnold saw Defendant give Mr. Porter the drugs which were to be sold. When Mr. Porter returned to the motel room, he did not have the drugs or the money from the sale. A discussion ensued between Defendant and Mr. Porter regarding what had happened during the sale. Ms. Arnold did not hear the specifics of the conversation.

Defendant received a phone call on his cellular telephone. He then asked Ms. Arnold to go outside and "make a sale" by delivering a seventy ($70.00) dollar piece of crack cocaine to Ricky

Hutton. He gave Ms. Arnold the crack cocaine in a plastic sandwich bag. The police arrived before Ms. Arnold could deliver the drugs to Mr. Hutton. She threw the bag containing the drugs "down the hill on the other side of the brick wall that is right on the other side of the white fence."

Ms. Arnold said that both marijuana and crack cocaine had been smoked in the motel room on the night of the incident. She assumed that Defendant brought the crack cocaine as well as the marijuana to the motel room, but she did not know for sure. Ms. Arnold witnessed Defendant selling drugs to various individuals while she was in the motel room. She then saw Defendant use the money from those drug sales to purchase one-half ounce of crack cocaine from Peter Ross.

Ms. Arnold admitted that she wrote Defendant a letter from the Hardin County Jail five days after she was arrested. In the letter, Ms. Arnold referred to the drugs as "mine" and told Defendant that she should have claimed the drugs the night of the incident. She testified however, that the drugs did not belong to her and that she wrote the letter because she was emotional and was involved in a sexual relationship with Defendant.

Ashley Morris testified that on August 9th, 2004, she rented room thirty-two at the Savannah Motel so that she and Defendant could get high on cocaine. Defendant gave Ms. Morris the money to rent the motel room. Johnny Porter and Jennifer Arnold were also present in the motel room, and they all "sat around and got high." Ms. Morris did not see anyone other than Defendant bring drugs into the motel room. At some point, Ricky Hutton entered the room and agreed to give Ms. Morris a ride to her house.

Crystal Bennett testified that on August 9th, 2004, Johnny Porter invited her and her husband to come down to room thirty-two at the Savannah Motel for a party. When they arrived at the motel room, she and her husband used crack cocaine. Ms. Bennett never saw anyone in the motel room smoking marijuana, but she said it smelled like someone had previously been smoking marijuana in the room. Ms. Bennett left the motel room to go to the store for cigarettes. She gave Mr. Porter a ride to someone's house on her way to the store. Ms. Bennett and Mr. Porter returned to the motel room independent of one another. When Mr. Porter returned, he and Defendant engaged in a discussion and Defendant looked "irritated" with Mr. Porter. She could not hear what they were discussing.

Ms. Bennett said that Defendant received a telephone call and then he "sack[ed] some crack cocaine up" for Jennifer Arnold to take outside and deliver to somebody. This was the only time that Ms. Bennett saw drugs taken out of the motel room. A few minutes after Ms. Arnold left the room, Johnny Porter "looked out the window and said, 'the law's here.'" Ms. Bennett said that Defendant grabbed the crack cocaine off the bed and went into the bathroom and shut the door. She heard the commode flush several times from where she was seated in the motel room. At that point, the police officers entered the room and began to search.

Jessica Webb testified that she was a forensic scientist with the Tennessee Bureau of Investigation. As part of her job, Ms. Webb performed a drug analysis on the substances recovered from the motel room on the night of the incident. Ms. Webb identified the drugs recovered from the scene as marijuana and cocaine base. There were "thirty-one point zero (31.0) grams" of marijuana and "eight point nine (8.9) grams" of cocaine base or "crack." Ms. Webb said that the quantity of the drugs was larger than what is normally seen in the crime lab, but still was not an unusual amount.

Johnny Porter, Defendant's co-defendant, testified that at approximately two-thirty p.m. on August 9, 2004, he went to room thirty-two at the Savannah Motel to see Defendant and to use drugs. Mr. Porter said that he was not delivering any drugs to Defendant, nor was he going to purchase drugs to sell somewhere else or to sell or deliver to somebody else. Mr. Porter did not see who brought the drugs to the motel room. He admitted that he had stopped by Ms. Bennett's house earlier that day and had invited her and her husband, Jonathan Bennett, to come to a party at the Savannah Motel.

When Mr. Porter arrived at the motel room there were people smoking marijuana and using cocaine. Mr. Porter admitted that he too was smoking marijuana and using cocaine. He said that the motel room smelled like marijuana. Mr. Porter said that a phone call was made to the motel room phone from someone at a man named Nebo's house. The caller said that people at Nebo's house wanted some crack. Mr. Porter told the caller that no one had any crack cocaine to sell, but he would come by Nebo's house anyway.

When Mr. Porter hung up the phone, Defendant threw him some crack cocaine, but Mr. Porter refused to take the drug to Nebo's and threw it right back to Defendant. He said that Defendant was not really serious, he was just "playing" with him. Ms. Bennett then gave Mr. Porter a ride to Nebo's house so that he could tell the people at the house that there was not any "dope" for sale. Mr. Porter said that when he returned to the motel room, Defendant handed Ms. Arnold "dope" and she went outside the motel room to sell it for him.

Prior to trial, Defendant filed a motion to suppress the evidence obtained as a result of the officer's search of the motel room. Defendant argued that the search was illegal and that the officers could not have reasonably believed that Ms. Arnold had authority to give consent to a search of the motel room. At the hearing on the motion, Officer Rich provided the sole testimony with respect to the validity of the search. That testimony was essentially the same testimony presented at trial, with one exception. At the motion to suppress hearing, Officer Rich testified that Ms. Arnold gave the officers permission to search the room based on the smell of marijuana. He stated, "we asked everybody there, and nobody would tell us nothing besides [Ms. Arnold]. She's the one that said it was her room. Nobody knew nothing about nothing." At trial however, Officer White testified that the officers asked the occupants of the room if Ms. Arnold was staying there and "they all said yes." The trial court denied Defendant's motion, finding that Ms. Arnold gave valid consent for a search of the motel room and in any event, the officers had probable cause to search the room, and they were justified in conducting the search without a warrant based on exigent circumstances.

## II. Motion to Suppress

Defendant argues that the trial court erred in overruling his motion to suppress the evidence found as a result of the search of the motel room because Officer Rich could not have reasonably believed that Jennifer Arnold had authority to consent to a search of room thirty-two of the Savannah motel. When the trial court makes findings of fact at the conclusion of a suppression hearing, the facts are accorded the weight of a jury verdict. *State v. Adams*, 859 S.W.2d 359, 362 (Tenn. Crim. App. 1992). The trial court's findings are binding upon this court unless the evidence in the record preponderates against them. *State v. Odom*, 928 S.W.2d 18, 23 (Tenn. 1996). Questions of credibility of witnesses, the weight and value of the evidence, and resolution of conflicts in evidence are matters entrusted to the trial judge as the trier of fact. The party prevailing in the trial court is entitled to the strongest legitimate view of the evidence adduced at the suppression hearing as well as all reasonable and legitimate inferences that may be drawn from the evidence. *Odom*, 928 S.W.2d at 23. The application of the law to the facts, however, requires *de novo* review. *State v. Daniel*, 12 S.W.3d 420, 423-24 (Tenn. 2000). Likewise, if the evidence does not involve a credibility assessment, the reviewing court must examine the record *de novo* without a presumption of correctness. *State v. Yeargan*, 958 S.W.2d 626, 629 (Tenn. 1997). Review is not limited to the record of the suppression hearing; rather, it extends to the entire record of proceedings. *State v. Henning*, 975 S.W.2d 290, 299 (Tenn. 1998).

Under both the Fourth Amendment to the United States Constitution and article I, section 7 of the Tennessee Constitution, a warrantless search is presumed unreasonable. *State v. Bartram*, 925 S.W.2d 227, 229-30 (Tenn. 1996) (citing *Coolidge v. New Hampshire*, 403 U.S. 443, 454-55, 91 S. Ct. 2022, 2032, 29 L. Ed. 2d 564 (1971)). There are many well-recognized exceptions to this rule, including a search conducted pursuant to consent. *Bartram*, 925 S.W.2d at 230. The State has the burden of establishing that the search was conducted pursuant to this exception. *Id.* If the State fails to satisfy its burden, the exclusionary rule may operate to bar the admissibility of any evidence obtained directly or derivatively from the unconstitutional search. *Wong Sun v. United States*, 371 U.S. 471, 485, 83 S. Ct. 407, 416, 9 L. Ed. 2d 441 (1963); *State v. Clark*, 844 S.W.2d 597, 600 (Tenn. 1992).

In the present case, Defendant asserts that the officers could not have reasonably believed that Ms. Arnold had authority to consent to a search of the room because on first encounter with Ms. Arnold, Officer Rich was "skeptical of [her] identity and her possessory interest in room [thirty-two] to the extent that he thought it was necessary to confirm her story." Defendant contends that the officers took no steps to verify Ms. Arnold's statement and confirm that she was staying in room thirty-two before they knocked on the door. He argues that he and the three other individuals were inside room thirty-two with the motel door closed. As such, he argues that he and the other individuals had an expectation of privacy in the motel room superior to that of Ms. Arnold's whom Officer Rich never saw inside the room. Because Defendant's "interest" in the motel room was superior to Ms. Arnold's, he argues that only he or one of the other individuals in the room could have given valid consent for a search. Therefore, he argues that the officers' warrantless search of the motel room was a violation of his Fourth Amendment right to privacy.

The trial court overruled the motion to suppress finding as follows:

Concerning the search, the Court finds that it is a constitutionally valid search. The Court finds, first of all, that the officer had a right to check on the information that Ms. Arnold, who was suspicious outside the premises, he had a right to check on that. As I said earlier, she's wandering about, skulking about, hiding behind the fence. She says, "I'm a guest here." When he attempts to verify that information, which is appropriate, the information given from her is that she is a guest at the motel, that room thirty-two is her room.

They proceed to that [room], knock on the door. He smells the odor of marijuana. He observes contraband in plain view, according to the officer, which, in and of itself, would give him the right concerning exigent circumstances, to enter the room since he's already violated - - already observed criminal activity.

Furthermore, the Court finds that she gave a valid consent, that none of the other Defendants in this case had any superior right over her to the room, that she indicates she's staying in the room, there's no information that she's not staying in the room, and she gives that consent to search, which is not any - - no one else had superior rights to her to give that consent. Perhaps any of the people in the room could have given the consent under these circumstances where there's simply a gang of people in the room. Certainly, she was in a position under these circumstances where she could give a valid consent.

We agree with the trial court that Ms. Arnold's consent to search the motel room was valid. "The sufficiency of consent depends largely upon the facts and circumstances in a particular case." *State v. Jackson*, 889 S.W.2d 219, 221 (Tenn. Crim. App. 1993). The prosecution bears the burden of proving that the consent was freely and voluntarily given. *See State v. McMahan*, 650 S.W.2d 383, 386 (Tenn. Crim. App. 1983). "'The existence of consent and whether it was voluntarily given are questions of fact.'" *State v. Ashworth*, 3 S.W.3d 25, 29 (Tenn. Crim. App. 1999) (quoting *McMahan*, 650 S.W.2d at 386).

Generally, consent may be given "either by the individual whose property is searched or by a third party who possesses common authority over the premises." *State v. Ellis*, 89 S.W.3d 584, 592 (Tenn. Crim. App. 2000) (citations omitted). "[T]he consent of one who possesses common authority over premises or effects is valid as against the absent, non-consenting person with whom that authority is shared." *State v. Bartram*, 925 S.W.2d 227, 230-31 (Tenn. 1996) (quoting *United States v. Matlock*, 415 U.S. 164, 171 n.7, 94 S. Ct. 988, 993 n.7, 39 L. Ed. 2d 242 (1974)). The United States Supreme Court defined common authority as the "mutual use of the property by persons generally having joint access or control for most purposes, so that it is reasonable to recognize that any of the co-inhabitants has the right to permit the inspection in his own right and that the others have assumed the risk that one of their number might permit the common area to be searched." *Bartram*, 925 S.W.2d at 231 (quoting *United States v. Matlock*, 415 U.S. at 171 n.7, 94

S. Ct. at 993 n.7). This court has previously explained that common authority may be established either by demonstrating that the third party in fact possessed common authority as defined above or, alternatively, by demonstrating that the facts available to the searching police officers would have warranted "a man of reasonable caution in the belief that the consenting party had authority over the premises." *Ellis*, 89 S.W.3d at 593 (quoting *Illinois v. Rodriguez*, 497 U.S. 177, 188-89, 110 S. Ct. 2793, 2801 (1990)).

Applying these principles to the facts of this case, we conclude that the officers had valid consent to enter and search the motel room. The facts show that Ms. Arnold was standing in the parking lot of the Savannah Motel and attempted to hide from Officer Rich when he drove by the motel on patrol. Officer Rich found her behavior suspicious and approached her to ascertain her identity and her reason for being at the motel. She gave her name and told Officer Rich that she was staying in room thirty-two at the motel. When Officer White arrived as back-up, Ms. Arnold agreed to accompany the officers to room thirty-two so that they could verify her identity and whether she was staying at the motel. As the officers approached the motel room, the door to the room opened and the officers immediately smelled marijuana. The occupants in the room verified Ms. Arnold's identity and the fact that she was staying in the room. The officers then asked Ms. Arnold, "Do you care if we search the apartment? Because we do smell marijuana coming [from the room]." Ms. Arnold subsequently consented to a search of the room. Under the circumstances, it was reasonable for the officers to believe that Ms. Arnold had the authority to consent to a search of the motel room. Consequently, the search was a valid, legal search and was not in violation of Defendant's Fourth Amendment rights. Defendant is not entitled to relief on this issue.

## II. Sufficiency of the Evidence

Defendant next argues that the evidence was insufficient to support his conviction of possession of over point five (0.5) grams of cocaine with intent to sell or deliver and misdemeanor possession of marijuana. Specifically, Defendant argues that there was no evidence demonstrating that Defendant intended to manufacture, sale, or deliver a controlled substance. He contends that the jury should not have accredited the testimony of Jennifer Arnold because "she gave her testimony against the defendant in hopes of getting a favorable sentence." Defendant also points out that the evidence showed Ms. Arnold had written a letter to Defendant in which she claimed that the drugs belonged to her. He notes that although Ms. Arnold said that she was in the parking lot of the motel to sell drugs for Defendant, no drugs were recovered from her person or from the parking lot. Finally, as further proof that the evidence was insufficient, Defendant points to the fact that among the occupants, he was the furthest from the drugs when the police entered the motel room.

When the sufficiency of the evidence is challenged, the relevant question is whether, after reviewing the evidence in the light most favorable to the state, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Tenn. R. App. P. 13(e); *State v. Williams*, 657 S.W.2d 405, 410 (Tenn. 1983). On appeal, the State is entitled to the strongest legitimate view of the evidence and all reasonable inferences which might be drawn therefrom. *State v. Cabbage*, 571 S.W.2d 832, 835 (Tenn. 1978). Questions concerning the credibility of the

-7-

witnesses, the weight and value of the evidence, as well as all factual issues raised by the evidence are resolved by the trier of fact. *Liakas v. State*, 286 S.W.2d 856, 859 (Tenn. 1956). Because a verdict of guilt against a defendant removes the presumption of innocence and raises a presumption of guilt, the convicted criminal defendant bears the burden of showing that the evidence was legally insufficient to sustain a guilty verdict. *State v. Evans*, 838 S.W.2d 185, 191 (Tenn. 1992).

It is a criminal offense for a person to knowingly "sell a controlled substance." *See* T.C.A. § 39-17-417(a)(3) (2003 & Supp. 2005). A person is guilty of possession with intent to sell cocaine, a Class B felony, "if the amount involved is point five (.5) grams or more of any substance containing cocaine." T.C.A. § 39-17-417(c)(1). A person is guilty of simple possession of marijuana, a Class A misdemeanor, if a person knowingly possesses or casually exchanges marijuana without a valid prescription obtained from a practitioner who distributed the prescription while acting in his professional capacity. T.C.A. § 39-17-418(a) (2003). "A 'casual exchange' contemplates a spontaneous passing of a small amount of drugs, for instance, at a party," where "money may or may not be involved." *State v. Copeland*, 983 S.W.2d 703, 708 (Tenn. Crim. App. 1998).

Tennessee courts recognize that possession may be either actual or constructive. *State v. Shaw*, 37 S.W.3d 900, 903 (Tenn. 2001); *see also State v. Bigsby*, 40 S.W.3d 87, 90 (Tenn. Crim. App. 2000). A person constructively possesses a controlled substance when he or she has "the power and intention at a given time to exercise dominion and control over [the contraband] either directly or through others." *Shaw*, 37 S.W.3d at 903 (quoting *State v. Patterson*, 966 S.W.2d 435, 445 (Tenn. Crim. App. 1997)). Said differently, constructive possession is the "ability to reduce an object to actual possession." *State v. Cooper*, 736 S.W.2d 125, 129 (Tenn. Crim. App. 1987). However, "[t]he mere presence of a person in an area where drugs are discovered is not, alone, sufficient." *Bigsby*, 40 S.W.3d at 90; *see also Cooper*, 736 S.W.2d at 129. "Likewise, mere association with a person who does in fact control the drugs or property where the drugs are discovered is insufficient to support a finding that the person possessed the drugs." *Cooper*, 736 S.W.2d at 129. Further, pursuant to Tennessee Code Annotated section 39-17-419, "[i]t may be inferred from the amount of a controlled substance or substances possessed by an offender, along with other relevant facts surrounding the arrest, that the controlled substance or substances were possessed with the purpose of selling or otherwise dispensing."

In the present case, the officers discovered Defendant in a motel room with several other individuals who were smoking crack cocaine and marijuana. After receiving consent to search the motel room, the officers found drug paraphernalia in plain view and recovered 8.9 grams of crack cocaine and 31 grams of marijuana that had been hidden in the motel room sofa. Ms. Morris testified that Defendant gave her the money to rent the room so that they could "get high" smoking crack cocaine. Ms. Morris also testified that Defendant was the only individual she witnessed bringing drugs into the room. Ms. Arnold testified that she saw Defendant selling drugs in the motel room. She further testified that Defendant gave her a "seventy dollar piece of crack cocaine" and told her to go outside and conduct a sale of drugs on his behalf. When the police arrived and disrupted the sale, Ms. Arnold immediately threw the drugs "down the hill on the other side of the

brick wall." Ms. Bennet testified that she saw Defendant "sack" some crack cocaine for Ms. Arnold to take outside the motel room and sell on his behalf. Mr. Porter likewise witnessed this transaction. In finding Defendant guilty, the jury accredited the testimony of the State's witnesses. We have previously stated that determining the credibility of witnesses is left to the sole province of the jury and we will not overturn those determinations. *Liakas*, 286 S.W.2d at 859. Viewing the evidence in a light most favorable to the State, we conclude that the evidence was sufficient to establish that Defendant was guilty of possession of cocaine over .5 grams with intent to sell and possession of marijuana. Defendant is not entitled to relief on this issue.

## III. Sentencing

Finally, Defendant argues that the trial court incorrectly applied enhancement factors in determining the length of his sentence. Specifically, Defendant argues that the trial court "should have provided more enhancing factors if it was not going to sentence [Defendant] to the minimum of the range for which he was eligible." This court's review of a challenged sentence is *de novo* with a presumption that the trial court's determinations are correct. T.C.A. § 40-35-401(d). This presumption of correctness is conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances. *State v. Pettus*, 986 S.W.2d 540, 543-44 (Tenn. 1999). In this regard, for the purpose of meaningful appellate review, the trial court must place on the record its reasons for arriving at the final sentencing decision, identify the mitigating and enhancement factors found, state the specific facts supporting each enhancement factor found, and articulate how the mitigating and enhancement factors have been evaluated and balanced in determining the sentence. T.C.A. § 40-35-210(f) (2003); *State v. Martin*, 146 S.W.3d 64, 69 (Tenn. Crim. App. 2004).

In conducting a *de novo* review, we must also consider (1) the evidence, if any, received at the trial and the sentencing hearing, (2) the presentence report, (3) the principles of sentencing and arguments as to sentencing alternatives, (4) the nature and characteristics of the criminal conduct, (5) any mitigating or statutory enhancement factors, (6) any statement that the defendant made on his own behalf, and (7) the potential for rehabilitation or treatment. T.C.A. §§ 40-35-102, -103, -210 (2003); *see State v. Ashby*, 823 S.W.2d 166, 168 (Tenn. 1991); *State v. Moss*, 727 S.W.2d 229, 236-37 (Tenn. 1986). However, if the record shows that the trial court failed to consider the sentencing principles and all relevant facts and circumstances, then review of the challenged sentence is purely *de novo* without the presumption of correctness. *Ashby*, 823 S.W.2d at 169. On appeal, the party challenging the sentence imposed by the trial court has the burden of establishing that the sentence is erroneous. T.C.A. § 40-35-401(d), Sentencing Commission Comments.

In sentencing Defendant, the trial court found as follows:

In this case, the State has filed appropriate range, and they've filed as Exhibit 2 in this hearing the prior convictions that show that, in fact, the Defendant is a persistent offender, being a range three offender. For the Class B felony, which the first count

is, over point five (.5) grams of cocaine, that would make a permissible range twenty to thirty years on that . . .

* * *

He's got prior - - a history of prior criminal convictions or behavior in addition to those necessary to establish the range. There's a host of misdemeanor convictions in addition to the five felony convictions.

He's previously been looked at and revoked from Community Corrections. He's been revoked from parole. History of rehabilitation to any type of alternative sentencing has been extremely poor in this case.

* * *

I'm going to put him in the middle of the range that he's eligible for. Twenty-five years, forty-five percent (45%).

Count two will be eleven months and twenty-nine days.

They will be concurrent. They will be consecutive to that prior conviction that is on appeal. I don't have the number in front of me, but that will be placed in the Judgment.

Prior to Defendant's sentencing hearing, our Supreme Court decided *State v. Gomez,* 163 S.W.3d 632 (Tenn. 2005), in which the court concluded that "[t]he Reform Act [of Tennessee] authorizes a discretionary, non-mandatory sentencing procedure and requires trial judges to consider the principles of sentencing to engage in a qualitative analysis of enhancement and mitigating factors . . . all of which serve to guide trial judges in exercising their discretion to select an appropriate sentence with the range set by the Legislature." *Gomez,* 163 S.W.3d at 661. Upon the finding of even one enhancement factor, "the statute affords the judge discretion to choose an appropriate sentence anywhere within the statutory range." *Id.* at 659.

The sentencing statute sets the sentence for a Range III, persistent offender convicted of a Class B felony at "not less than twenty (20) nor more than thirty (30) years." T.C.A. § 40-35-112(c)(2). For a Class A misdemeanor, the authorized term of imprisonment is "not greater than eleven (11) months twenty-nine (29) days." T.C.A. § 40-35-111(e)(1). As previously stated, Defendant was sentenced as a Range III, persistent offender and received twenty-five years for his Class B felony conviction, and eleven months and twenty-nine days for his Class A misdemeanor, to be served concurrently. As such, Defendant's sentences were within the statutory range set forth by the Legislature. The record reflects that in sentencing Defendant, the trial court relied on Defendant's extensive criminal history and lack of potential for rehabilitation. *See* T.C.A. § 40-35-114(1), (8) (Supp. 2005). Accordingly, under *Gomez,* the trial court properly considered the

sentencing principles and did not err in sentencing Defendant to a term of twenty-five years for his Class B felony conviction and eleven months, twenty-nine days for his Class A misdemeanor conviction. *Gomez*, 163 S.W.3d at 659. Defendant is not entitled to relief on this issue.

## CONCLUSION

For the foregoing reason, the judgments of the trial court are affirmed.

_____
THOMAS T. WOODALL, JUDGE