IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs January 13, 2009

## STATE OF TENNESSEE V. ALFRED C. WHITEHEAD

**Appeal from the Criminal Court for Davidson County**
**No. 2007-A-816     Cheryl Blackburn, Judge**

No.  M2008-00912-CCA-R3-CD - Filed May 22, 2009

Appellant, Alfred C. Whitehead, pled guilty to possession of more than .5 ounces of marijuana with the intent to sell or deliver.  As part of the guilty plea, Appellant reserved the following certified question of law for appeal pursuant to Rule 37(b)(2) of the Tennessee Rules of Criminal Procedure to determine whether the trial court erred in denying the motion to suppress.  We determine that the trial court properly denied the motion to suppress where the initial seizure occurred after police officers entered the residence based on consent.  Accordingly, the judgment of the trial court is affirmed.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court is Affirmed.**

JERRY L. SMITH, J., delivered the opinion of the court, in which DAVID H. WELLES and ROBERT W. WEDEMEYER, JJ., joined.

Niles S. Nimmo, Nashville, Tennessee, for the appellant, Alfred C. Whitehead.

Robert E. Cooper, Jr., Attorney General and Reporter; Benjamin A. Ball, Assistant Attorney General; Victor S. Johnson, District Attorney General, and Matthew Pietsch, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

In March of 2007, Appellant and LaShone Demetric Whitehead, Appellant's nephew, were indicted for possession of more than .5 ounces of marijuana with the intent to sell or deliver and possession of drug paraphernalia with the intent to prepare a controlled substance.  Lashone Whitehead was also indicted for possession of marijuana.

Prior to trial, Appellant filed a motion to suppress the evidence in which he argued that the police illegally searched his home by making an "illegal, warrantless entry" during which they

observed contraband drugs. Appellant argued that the initial illegal search led to the issuance of a search warrant. When the search warrant was executed, the police discovered additional drugs and paraphernalia.

The trial court held a hearing on the motion to suppress. At the hearing, Officer Jamal Randall of the Metro Nashville Police Department testified that he responded to a call on October 22, 2006. The call requested that he check on the welfare of someone at 920 Joseph Avenue. Officer Randall suspected that the call was related to a domestic violence incident.

As Officer Randall approached the house, he saw a woman run up to the door of the residence, enter briefly, and leave. Officer Randall parked his cruiser and approached the house on foot. From the outside of the house, Officer Randall was able to see through the screen door that there was a man, woman, and a child sitting inside the house on the couch. Officer Randall knocked on the door and Lashone Whitehead answered. Lashone Whitehead exited the house and spoke with Officer Randall outside in the yard. During their initial conversation, people from the neighboring homes approached with questions and comments, interrupting the conversation. Officer Randall became frustrated with the constant interruptions from neighbors, so he asked Lashone Whitehead if they could step inside the house to continue their conversation. Lashone replied, "Yes," and stepped inside.

Officer Randall stepped inside the home, just inside the door. The screen door closed behind him. Immediately, he was confronted with the smell of marijuana. Officer Randall also observed a leafy green substance and what he believed to be a partially smoked marijuana "blunt" nearby. Officer Randall ascertained that everyone in the house was safe and inquired about the marijuana. Lashone Whitehead admitted that he had just smoked marijuana prior to the officer's arrival. Officer Randall asked for permission to search the remainder of the house, and Lashone Whitehead informed the officer that the house belonged to his uncle, Appellant. Lashone told the officer that he was housesitting and that he would need to get Appellant's permission prior the search of the residence.

Lashone Whitehead called Appellant on a cell phone, at one point using speaker phone. Officer Randall heard Appellant exclaim, "As long as they don't search the back bedroom, then we're fine." Lashone Whitehead appeared concerned when Officer Randall heard this exchange. Officer Randall spoke with Appellant during the call and asked him to return to the house. Appellant assured the officer that he would be home within twenty to thirty minutes. Appellant did not arrive after almost an hour.

Officer Randall had other officers come to secure the scene while he left to obtain a search warrant. Officer Randall returned with the search warrant and executed it at 920 Joseph Avenue. As a result of the search, officers found 80 grams of marijuana, plastic bags, and a set of digital scales in a back bedroom that appeared to be occupied by Appellant.

At the conclusion of the hearing, the trial court took the matter under advisement. In a written order, the trial court made the following findings of fact:

Officer Randall testified that the police received a call . . . at 920 Joseph Avenue. . . .

Co-defendant Lashone Whitehead came to the door. Officer Randall asked him to step outside down off the porch to talk. . . . Lashone Whitehead complied . . . . Since it was difficult to interview Lashone Whitehead to see if he was in danger [because of interruptions from neighbors], Officer Randall asked if they could step back inside the house citing that he felt it was best for their safety as well as for Lashone Whitehead's confidentiality. When Officer Randall asked if they could go back inside, Lashone Whitehead replied "yeah" in a low tone and shook his head affirmatively. They proceeded back to the residence where Lashone Whitehead opened the screen door; Officer Randall followed.

Once Officer Randall entered the residence, he said he noticed a strong odor of marijuana. When he looked to his left, he observed a green leafy substance appearing to be marijuana in an ashtray on the cocktail table. On another table, he observed a blunt cigarette, . . . in another ashtray. . . .

Officer Randall asked for consent to search the residence and Lashone Whitehead denied the request by responding that he did not know if the house could be searched because it was his uncle's house so his uncle would have to be asked. A phone call was then made to [Appellant]. . . . Officer Randall heard a voice he believed to be Defendant saying, "as long as they don't search the back bedroom we are fine . . . ."

Once the call concluded, Lashone Whitehead did not give permission to search, so Officer Randall obtained a search warrant while other officers secured the scene. The officers conducted a protective sweep of the living room . . . .

. . . .

Pursuant to the search warrant, Officer Randall conducted a search. He recovered approximately 80g of marijuana from the back bedroom along with digital scales and baggies that are commonly used to package marijuana for resale.

. . . .

Officer Randall testified that even if Lashone Johnnson declined to let him enter when he asked initially, he would have still come in citing that Metropolitan Police Department policy and the law allows officers to enter a residence without consent if the officer believes someone is hurt or in an emergency situation. In light of the phone call made to police, Officer Randall testified he felt he needed to enter the house to confirm if everyone was okay.

The trial court stated that Officer Randall "lawfully enter[ed] the residence with [LaShone Whitehead's] consent . . . immediately recognized the smell of marijuana and observed a blunt cigarette in one ashtray in the living room as well as a green leafy substance that through his experience in training he recognized to be marijuana." In other words, the trial court determined that the marijuana in the front room was in plain view. Further, the trial court found that there was probable cause for the issuance of a search warrant to search the remainder of the property because the officer had lawfully entered the residence, observed contraband in plain view, and heard Appellant on the phone with Lashone expressing his fear about a search of the "back bedroom."

Subsequently, Appellant pled guilty to possession of more than .5 ounces of marijuana with the intent to sell in return for dismissal of the paraphernalia charge and an effective sentence of four years. By agreement, Appellant reserved the following certified question of law for review:

> Did the Court error [sic] in denying the Defendant's request to suppress the fruits of a search of his home by police on or about October 21, 2006, under the authority of a search warrant issued by a Davidson County General Sessions Court Judge. The Defendant alleged that the initial entry of his residence by police was done without [the] benefit of a search warrant and was not pursuant to one of the narrowly defined exceptions to the warrant requirement. The court found that the viewing by police of marijuana in the Defendant's living room was lawful and based upon consent. The Court further found that the marijuana viewed by the officer provided probable cause for the issuance of a search warrant. Without the evidence seized from Defendant's residence pursuant to the search warrant, the State could not have continued the Defendant's prosecution.

Appellant filed a timely notice of appeal.

*Analysis*

This Court will uphold a trial court's findings of fact in a suppression hearing unless the evidence preponderates otherwise. *State v. Hayes*, 188 S.W.3d 505, 510 (Tenn. 2006) (citing *State v. Odom*, 928 S.W.2d 18, 23 (Tenn. 1996)). On appeal, "[t]he prevailing party in the trial court is afforded the 'strongest legitimate view of the evidence and all reasonable and legitimate inferences that may be drawn from that evidence.'" *State v. Carter*, 16 S.W.3d 762, 765 (Tenn. 2000) (quoting *State v. Keith*, 978 S.W.2d 861, 864 (Tenn. 1998)). "Questions of credibility of the witnesses, the weight and value of the evidence, and resolution of conflicts in the evidence are matters entrusted to the trial judge as the trier of fact." *Odom*, 928 S.W.2d at 23. Our review of a trial court's application of law to the facts is de novo, with no presumption of correctness. *State v. Walton*, 41 S.W.3d 75, 81 (Tenn. 2001) (citing *State v. Crutcher*, 989 S.W.2d 295, 299 (Tenn. 1999); *State v. Yeargan*, 958 S.W.2d 626, 629 (Tenn. 1997)). When the trial court's findings of fact are based entirely on evidence that does not involve issues of witness credibility, however, appellate courts are as capable as trial courts of reviewing the evidence and drawing conclusions, and the trial court's findings of fact are subject to de novo review. *State v. Binette*, 33 S.W.3d 215, 217 (Tenn. 2000).

Both the Fourth Amendment to the United States Constitution and article I, section 7 of the Tennessee Constitution protect individuals against unreasonable searches and seizures by government agents. *See* U.S. Const. amend. IV; Tenn. Const. art. I, § 7. "These constitutional provisions are designed to 'safeguard the privacy and security of individuals against arbitrary invasions of government officials.'" *State v. Keith*, 978 S .W.2d 861, 865 (Tenn. 1998) (quoting *Camara v. Municipal Court*, 387 U.S. 523, 528 (1967)). The Tennessee Supreme Court has noted previously that "[a]rticle I, [section] 7 [of the Tennessee Constitution] is identical in intent and purpose with the Fourth Amendment [of the United States Constitution]," and that federal cases applying the Fourth Amendment should be regarded as "particularly persuasive." *Sneed v. State*, 423 S.W.2d 857, 860 (Tenn. 1968).

Under both constitutions, "a warrantless search or seizure is presumed unreasonable, and evidence discovered as a result thereof is subject to suppression unless the State demonstrates that the search or seizure was conducted pursuant to one of the narrowly defined exceptions to the warrant requirement." *Yeargan*, 958 S .W.2d at 629 (citing *Coolidge v. New Hampshire*, 403 U.S. 443, 454-55 (1971)); *see also State v. Garcia*, 123 S.W.3d 335, 343 (Tenn. 2003).

The most common exceptions to the requirement for a search warrant are: (1) consent to search; (2) a search incident to a lawful arrest; (3) probable cause to search with exigent circumstances; (4) in hot pursuit; (5) a stop and frisk situation; and (6) plain view. *See State v. Bartram*, 925 S.W.2d 227, 230 n.2 (Tenn. 1996). "If the circumstances of a challenged search and seizure come within one of the recognized exceptions, the fruits of that search and seizure are not subject to operation of the exclusionary rule and may be properly admitted into evidence." *State v. Shaw*, 603 S.W.2d 741, 743 (Tenn. Crim. App. 1980).

First, Appellant argues that Lashone Whitehead did not have "apparent, or actual, authority to grant entry to [the residence] to [O]fficer Randall." One exception to the warrant requirement for a valid search is that an individual gives consent to the warrantless search. *Schneckloth v. Bustamonte*, 412 U.S. 218, 248 (1973). The consent must however, be "'unequivocal, specific, intelligently given and uncontaminated by duress or coercion.'" *State v. Brown*, 836 S.W.2d 530, 547 (Tenn. 1992). In determining the validity of a consent to search, courts must look at the totality of the circumstances surrounding the obtaining of consent. *United States v. Drayton*, 536 U.S. 194 (2002). In *State v. Charles Ray Harvey*, No. E2006-00882-CCA-R3-CD, 2008 WL 565715, at *13 (Tenn. Crim. App., at Knoxville, Mar. 4, 2008), this Court examined the process of determining whether a person has the authority to grant consent for a search as follows:

> In most circumstances valid consent exists when given "either by the individual whose property is searched or by a third party who possesses common authority over the premises." *State v. Ellis*, 89 S.W.3d 584, 592 (Tenn. Crim. App. 2000) (citations omitted). The Supreme Court has defined common authority as the
>
> > mutual use of the property by persons generally having joint access or control for most purposes, so that it is reasonable to recognize that

> any of the co-inhabitants has the right to permit the inspection in his
> own right and that the others have assumed the risk that one of their
> number might permit the common area to be searched.
>
> *United States v. Matlock*, 415 U.S. 164, 171 n.7, 94 S.Ct. 988, 993 n.7 (1974); *see*
> *Bartram*, 925 S.W.2d at 231. This court has previously concluded that valid consent
> exists if (1) the third party in fact had common authority or (2) a reasonable person,
> given the facts and circumstances available to the police, would have concluded "that
> the consenting party had authority over the premises." *Ellis*, 89 S.W.3d at 593 (citing
> *Illinois v. Rodriguez*, 497 U.S. 177, 188-89, 110 S.Ct. 2793, 2801 (1990)).

*Charles Ray Harvey*, 2008 WL 565715, at *13. In the case herein, the trial court accredited the State's testimony that Lashone Whitehead had the apparent authority to permit Officer Randall to enter the residence. Lashone Whitehead informed the officer that he was housesitting for his uncle and told Officer Randall that it was permissible to enter the residence. Once inside the residence, Officer Randall smelled marijuana and observed marijuana in plain view.

The plain view doctrine requires proof that: (1) the objects seized were in plain view; (2) the viewer had a right to be in position for the view; (3) the seized object was discovered inadvertently; and (4) the incriminating nature of the object was immediately apparent. *Coolidge v. New Hampshire*, 403 U.S. 443, 470 (1971); *State v. Hawkins*, 969 S.W.2d 936, 938 (Tenn. Crim. App. 1997); *State v. Horner*, 605 S.W.2d 835, 836 (Tenn. Crim. App. 1980). The facts herein support the trial court's determination that the marijuana was in plain view, discovered inadvertently when Officer Randall entered the residence with Lashone Whitehead's permission, and the incriminating nature of the marijuana was apparent. *Id.* In fact, Lashone Whitehead informed the officer that he had just smoked a marijuana cigarette in the house.

The question of whether Lashone Whitehead had the authority to voluntarily consent to the officer's entry that ultimately led to the issuance of the search warrant was a factual question regarding credibility, and the trial court accredited the police officer's testimony. "Questions of credibility of the witnesses, the weight and value of the evidence, and resolution of conflicts in the evidence are matters entrusted to the trial judge as the trier of fact." *Odom*, 928 S.W.2d at 23. This Court will uphold a trial court's findings of fact in a suppression hearing unless the evidence preponderates otherwise. *Hayes*, 188 S.W.3d at 510 (citing *Odom*, 928 S.W.2d at 23). We conclude that the evidence in the record supports the trial court's findings. Appellant is not entitled to relief on this issue.

*Conclusion*

For the foregoing reasons, the judgment of the trial court is affirmed.

_____
JERRY L. SMITH, JUDGE