STATE of Tennessee, Plaintiff–Appellant,

v.

**Charles William BARTRAM, Defendant–Appellee.**

Supreme Court of Tennessee, at Nashville.

June 24, 1996.

228

Charles Burson, Attorney General & Reporter, Michael E. Moore, Solicitor General, Nashville, Dent Morris, Assistant District Attorney, Springfield, for appellant.

Michael R. Jones, Public Defender, Clarksville, for appellee.

## OPINION

ANDERSON, Justice.

We granted this appeal to re-examine this Court's adoption of the so-called "angry wife" exception to the rule that a warrantless search and seizure is presumed unreasonable unless there is a valid consent to the search. Fifty years ago, in *Kelley v. State*[1], this Court viewed the marital relationship as an agency relationship between the husband and wife and, therefore, reasoned that the consent of the wife would bind the husband unless the consenting wife's actions were hostile and adverse to her husband's interest.

The trial court, relying on the *Kelley* precedent, suppressed the evidence obtained in a warrantless search and dismissed this case because consent to the search was given by an angry wife. The Court of Criminal Appeals affirmed.

After careful consideration, we have determined that *Kelley* should be overruled as there is no longer a valid reason for the rule in either law or logic. We adopt instead the modern rule that the consent to a search of one who possesses common authority over premises is valid against the absent nonconsenting person with whom that authority is shared.

Accordingly, the Court of Criminal Appeals' judgment affirming the trial court is reversed, and this cause is remanded to the trial court.

### BACKGROUND

Jo Marie Bartram called the police as a result of a domestic dispute between herself and her husband, Charles Bartram. The police responded and during the call to the Bartram residence, one of the officers seized

---

1. 184 Tenn. 143, 197 S.W.2d 545 (1946). In Tennessee, the exception was confined to only one spouse—"the angry wife."

a plastic bag of marijuana from the refrigerator. As a result, Charles Bartram was indicted on two counts of possession of marijuana with intent to sell or deliver. He moved to suppress the marijuana, arguing that it was illegally seized because it was a warrantless search without consent in violation of the Tennessee and United States Constitutions.

At the hearing on Bartram's motion to suppress, the evidence was disputed. The police officer testified he was standing in the living room when Jo Marie Bartram walked into the kitchen, opened the door to the refrigerator, pulled out a plastic bag, and said, "Here, this is what he's been doing." Jo Marie Bartram then, according to the officer, gave him the plastic bag containing marijuana.

Jo Marie Bartram, however, told a different story. While she admitted opening the refrigerator door, she claims she pointed to a can of *beer* and said, "here is his problem." According to Jo Marie Bartram, the officer then walked over, opened the door to the side-by-side freezer compartment, noticed the bag of marijuana, and seized it.

After hearing the testimony of the officer and Mrs. Bartram, the trial judge by implication credited the officer's testimony and granted the defendant's motion to suppress "based upon *Kelley v. State.*" There, this Court held that an angry wife's consent to a search is not effective to waive her husband's protection against unreasonable searches and seizures and render admissible evidence seized in the search.

Since the evidence suppressed by the trial court was the only evidence against the defendant, Charles Bartram, the trial court dismissed the case. The State appealed, and the Court of Criminal Appeals affirmed the trial court's suppression decision and dismissal, stating, "[u]ntil such time as *Kelley* is overruled, the case constitutes the law of this State, binding upon this Court and the trial courts."

Thereafter, we granted the State permission to appeal, and for the reasons articulated below, we now overrule *Kelley v. State.*

## ANGRY WIFE EXCEPTION

The State, in this appeal, argues that the rule announced in *Kelley* is completely anachronistic and without basis in law or policy and should be overruled. On the other hand, Bartram argues that the exception is based on public policy considerations and aimed at preserving family harmony, and as such, should be re-affirmed.

■ The Fourth Amendment to the Constitution of the United States provides:

**Unreasonable searches and seizures.** The right of the people to be secure in their persons, houses, papers, and effects against unreasonable searches and seizures shall not be violated. No warrant shall issue but upon probable cause supported by oath or affirmation and particularly describing the place to the searched and the person or things to be seized.

Likewise, Article 1, Section 7 of the Constitution of Tennessee guarantees that the people shall be secure in their persons, houses, papers, and possessions from unreasonable searches and seizures. Accordingly, both the Fourth Amendment to the United States Constitution and Article 1, Section 7 of the Tennessee Constitution prohibit "unreasonable" searches and seizures. The State may not invade this personal constitutional right of the individual citizen except under the most exigent circumstances.

This broad protection from unreasonable search and seizure originated with the ancient concept that a man's home is his castle. William Pitt, Earl of Chatham, in a speech on the floor of the English House of Commons in 1763, eloquently articulated the individual liberty protected:

The poorest man may in his cottage bid defiance to all the force of the Crown. It may be frail; its roof may shake; the wind may blow through it; the storms may enter, but the King of England cannot enter; all his forces dare not cross the threshold of the ruined tenement.

*United States v. Nelson,* 459 F.2d 884, 885 (1972).

■ A warrantless search and seizure, therefore, is presumed unreasonable unless it falls into one of the narrowly defined excep-

tions, or exigent circumstances, to the warrant requirement. *Coolidge v. New Hampshire*, 403 U.S. 443, 454–55, 91 S.Ct. 2022, 2032, 29 L.Ed.2d 564, 576 (1971). The mere existence of these circumstances does not necessarily validate a warrantless search. As pointed out in *Nelson, supra*, exceptions are "jealously and carefully drawn." There must be a showing by those asserting the exception that the exigencies of the situation made the search imperative. The burden is on those seeking the exception to show the need. It is, of course, well settled that one of the exceptions to the warrant requirement is a search conducted pursuant to consent. *Schneckloth v. Bustamonte*, 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973); *State v. Jackson*, 889 S.W.2d 219, 221 (Tenn.Crim. App.1993).[2] The sufficiency and validity of consent depends largely upon the facts and circumstances presented by each particular case. *Jackson*, 889 S.W.2d at 221.

In *Kelley*, this Court considered whether an "angry wife's" consent to search was valid so as to render evidence seized in the search admissible against her husband in a criminal prosecution. Kelley's wife called police to the couple's home to arrest Kelley for beating her. When the officers arrived, Kelley was gone. His wife, however, escorted the officers inside the premises and showed them several jars of whiskey, which she said belonged to her husband. The officers seized the whiskey, and a as a result, Kelley was convicted of possessing intoxicating liquors. He appealed, and this Court reversed the conviction, holding that the whiskey was obtained by reason of an unlawful and illegal search and seizure. The *Kelley* court's analysis follows:

> [T]he wife was angry at her husband, was exceedingly hostile in her attitude toward him, had called the officers to arrest him and then, when the officers appeared, did her utmost to get the plaintiff in error into trouble....

We are of the opinion that in such circumstances the wife had no right to waive her husband's protection against unreasonable searches and seizures any more than any other person would have had. Her whole attitude was contrary to his interests, and it could not be said that she was acting in any sense in the family interest with any authority to waive rights which might otherwise properly arise out of the relationship.

*Kelley*, 184 Tenn. at 146, 197 S.W.2d at 546.

■ At the time of this Court's decision in *Kelley*, the question of third party consent, including spousal consent, was analyzed by some courts with reference to agency principles. 3 La Fave, *Search and Seizure*, § 8.4(a), p. 759 (3d ed.1996). Those courts were of the view that the marital relationship itself gave rise to an agency relationship between the spouses, and under that theory, the consent of one spouse would ordinarily bind the other spouse. *Id.* Generally, courts more closely scrutinized the consent given by the wife than by the husband (apparently because of now antiquated views of women's rights). Applying this close scrutiny in the agency context, a number of courts held that an angry wife's consent was not sufficient to bind the husband because her actions were hostile and obviously contrary to the interests of her husband. *Id.* It is upon this proposition that the decision in *Kelley* apparently was based. *Id.* If applied evenly to both spouses, that rule may have had some justification when courts were relying upon agency principles to analyze and uphold searches based on third-party consent. It is, however, quite clearly inconsistent with more recent persuasive authority which rejects the agency theory as the test for analyzing the validity of third-party consent searches.

■ A more modern test, as enunciated by the United States Supreme Court, is that the consent of one who possesses common authority over premises or effects is valid as

---

2. Other exceptions to the warrant requirement include searches and seizures conducted incident to a lawful arrest, those in "plain view," those in the "hot pursuit" of a fleeing criminal, those limited to a "stop and frisk" based on reasonable suspicion of criminal activity, and those based on

probable cause in the presence of exigent circumstances. *Coolidge v. New Hampshire, supra; Katz v. United States*, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967); *State v. McMahan*, 650 S.W.2d 383 (Tenn.Crim.App.1983).

against the absent, non-consenting person with whom that authority is shared. *United States v. Matlock*, 415 U.S. 164, 171, 94 S.Ct. 988, 993, 39 L.E.2d 242 (1974). The court defined common authority as the "mutual use of the property by persons generally having joint access or control for most purposes, so that it is reasonable to recognize that any of the co-inhabitants has the right to permit the inspection in his own right and that the others have assumed the risk that one of their number might permit the common area to be searched." *Id.*, 415 U.S. at 171, n. 7, 94 S.Ct. at 993, n. 7.

Even before the United States Supreme Court rendered its decision in *Matlock*, Tennessee courts had adopted and applied the "common authority" test. For example, in *McGee v. State*, 2 Tenn.Crim.App. 100, 451 S.W.2d 709, 712 (1969), the intermediate court stated that "[p]ersons having equal rights to use or occupation of the premises may consent to a search of them and such search will be binding upon the co-occupants. A joint user has authority to consent to a search." Following *Matlock*, the common authority test was applied in Tennessee in the context of a spousal consent case. In *State v. Pritchett*, 621 S.W.2d 127, 134 (Tenn. 1981), this Court stated, "[a] wife can consent to the search of her home, and if objects are found which would incriminate her husband, such objects are admissible in evidence." (Citations omitted.) From our review of the relevant authorities, it appears that *Kelley* was the last remnant of a dying rule which should now be finally put to rest.

In our view, there is no reason, either in law or in logic, to deny to a wife who has common authority over the marital residence, the right to consent to a search of that residence simply because she is angry with her husband at the time she gives her consent. The public policy basis of preserving family harmony which the defendant argues supports the rule is unpersuasive. When one spouse is willing to consent to a search of the marital residence, there is most likely little marital harmony left to be preserved. *Cf. State v. Hurley*, 876 S.W.2d 57, 74 (Tenn. 1993). But even if some semblance of marital harmony remains, that consideration is irrelevant to the more important and separate principle that the wife has an independent right of consent based on her authority over the premises. Accordingly, both on reason and precedent, the correct answer to the question before us is that *Kelley* must be overruled, and therefore, the search to which Jo Marie Bartram consented is valid against her husband. We agree with the Massachusetts Supreme Court, that in a case such as this, "the wife's action is not dependent on the finding of any express or implied authority from the husband to consent to the search, but is based upon her own right, at least equal to that of the husband, to the use, enjoyment and control of their household premises." *Commonwealth v. Martin*, 358 Mass. 282, 264 N.E.2d 366, 369 (1970); *see also State v. McCarthy*, 26 Ohio St.2d 87, 269 N.E.2d 424, 428 (1971); *United States v. McAlpine*, 919 F.2d 1461 (10th Cir.1990); *United States v. Lawless*, 465 F.2d 422 (4th Cir.1972); *Roberts v. United States*, 332 F.2d 892, 896–97 (8th Cir.1964); 3 La Fave *Search and Seizure*, § 8.4(a), p. 759 (3d ed.1996) (specifically noting that the view in *Kelley* "is not sound").

### *CONCLUSION*

Because we have determined that there is no longer a valid basis, in either law or logic, for the continued existence of the "angry wife" exception, *Kelley v. State*, 184 Tenn. 143, 197 S.W.2d 545 (Tenn.1946), is hereby overruled. We adopt in its place the common authority rule as outlined above. Accordingly, the Court of Criminal Appeals' judgment affirming the trial court's decision suppressing the evidence and dismissing this case is reversed, and this cause remanded to the trial court for further proceedings. Costs of this appeal are taxed to the defendant, Charles William Bartram.

BIRCH, C.J., and DROWOTA, REID and WHITE, JJ., concur.