# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
### Assigned on Briefs March 1, 2005

## STATE OF TENNESSEE v. MACK T. TRANSOU

**Appeal from the Circuit Court for Madison County**
**No. 02-359     Roy B. Morgan, Jr., Judge**

---

**No. W2004-01475-CCA-R3-CD   - Filed June 30, 2005**

---

The defendant, Mack T. Transou, stands convicted of rape and sexual battery, for which he received an effective sixteen-year sentence. Aggrieved of his convictions and sentence, the defendant brings the instant appeal challenging the trial court's denial of his motion to suppress DNA evidence and the imposition of his sentence in violation of his right to trial by jury. Following our review upon the record, we affirm the defendant's convictions and sentence.

**Tenn. R. App. P. 3; Judgments of the Circuit Court are Affirmed.**

JAMES CURWOOD WITT, JR., J., delivered the opinion of the court, in which THOMAS T. WOODALL and J.C. MCLIN, JJ., joined.

Mike Mosier, Jackson, Tennessee, for the Appellant, Mack T. Transou.

Paul G. Summers, Attorney General & Reporter; Renee W. Turner, Assistant Attorney General; Jerry Woodall, District Attorney General; and Jody Pickens, Assistant District Attorney General, for the Appellee, State of Tennessee.

## OPINION

Because the defendant does not attack the sufficiency of the evidence to support his two convictions, we will only summarize those facts relevant to the issue whether the DNA evidence collected from the defendant should have been suppressed. The defendant was previously convicted of being a habitual motor offender and began serving his incarcerative sentence for that offense on September 7, 1999. As part of the intake process in 1999, the incoming inmates received physicals and had blood samples drawn to test for, *inter alia*, communicable diseases. The incoming inmates all received several forms, one of which was a consent form to allow a Tennessee Department of Correction (TDOC) agent to draw a blood sample. As indicated on the form, the inmates had a right to refuse to consent. If an inmate refused to sign the form, the TDOC would conduct an administrative hearing on the matter. According to the defendant, the usual result of this proceeding

would be that the defendant would be taxed the cost of the hearing, would lose sentencing credits, and would nevertheless be forced to provide a blood sample.

When the defendant was presented with the consent form on September 7, 1999, he signed the form on the line indicating that he consented to providing the blood sample. The defendant left blank a second signature line indicating he refused to consent, and he signed the form on another line indicating that he had read the entire form and understood the contents of the form. Subsequently, a TDOC agent drew a sample of the defendant's blood, and the resulting DNA profile generated from that blood sample was placed in the Combined DNA Index System (CODIS), a database containing the DNA profiles of convicted offenders.[1]

On March 17, 2002, the defendant entered the bedroom of C.T.,[2] a 62-year-old woman living in a boarding house in Jackson, Tennessee. The defendant vaginally raped the victim and performed oral sex on her. After she reported the rape to police, investigating officers brought the victim to a hospital where medical professionals performed a rape-kit examination on her. The examination recovered a semen sample, from which Tennessee Bureau of Investigation (TBI) forensic analysts extrapolated a DNA profile. This profile was then entered into CODIS, and the database matched the defendant's DNA profile to that of the victim's assailant.

Subsequently, police officers arrested the defendant on May 15, 2002, and the defendant was held overnight until a police officer interviewed him the following morning. The officer testified that he interviewed the defendant to learn more about the defendant's involvement in the instant crime and also to obtain the defendant's DNA for generating a DNA profile. This DNA profile would then be compared with the defendant's 1999 profile and the victim's perpetrator's profile, thereby confirming that the defendant was indeed the perpetrator. During the interview, the defendant refused to sign a waiver of his constitutional rights and make a statement about the instant crime. He did, however, sign a consent form allowing the police to collect a blood sample from him.[3] Thereafter, the police transported the defendant to a family practice center where

---

[1] The defendant submitted blood samples on three different occasions. The first blood sample was given in 1999, as outlined above. In 2000 the defendant submitted a second blood sample at the commencement of an unrelated sentence as part of the intake process at the same penal institution where he submitted a blood sample in 1999. However, a DNA profile generated from the second blood sample was not entered into the CODIS database because the defendant's DNA profile had been entered in 1999. As discussed *infra*, the defendant gave a third blood sample in 2002 when police identified him as a suspect for the instant crimes after the defendant's 1999-generated DNA profile matched the DNA profile extrapolated from the victim's rape kit.

[2] It is the policy of this court to refrain from referring to victims of sexual crimes by name.

[3] During the police interrogation, only the interviewing officer and the defendant were present, and the interview was neither video-taped nor audio-recorded. At the conclusion of the suppression hearing, the trial court specifically accredited the officer's testimony that the defendant refused to sign a waiver form and make a statement but did sign the 2002 consent form allowing the police to collect a blood sample from him. Furthermore, after noting the court's familiarity with the defendant's signature and comparing the signature on the 2002 consent form to known examplars of the defendant's signature, the trial court found that the signature on the consent form was indeed the
(continued...)

his blood was drawn, and the blood sample was then transported to the TBI crime lab for analysis. The resulting DNA profile confirmed that the defendant's DNA profile matched the profile of the victim's perpetrator.

Pre-trial, the defendant moved to suppress this evidence, and following an evidentiary hearing, the trial court denied the motion. Specifically, the trial court found that the statute requiring that inmates allow collection of blood samples for DNA profiling was not applicable to the defendant when the TDOC agent collected his blood on September 7, 1999, because the statute was not effective when the defendant committed the crime for which he was then being incarcerated. *See* Tenn. Code Ann. § 40-35-321(d)(1) (2003) (requiring that "a person convicted of any felony offense committed on or after July 1, 1998" shall be required "to provide a biological specimen for the purpose of DNA analysis"). However, the court found that the September 7, 1999 blood sample was not collected in contravention of the defendant's rights because the defendant consented to the procedure. Specifically, the court found that the TDOC agents explained the consent form to the defendant and that he had an opportunity to refuse to consent and did not do so. Moreover, the defendant explained his reasons for consenting to the procedure. Noting the defendant's extensive criminal history and familiarity with the TDOC system, the court found that the defendant consented to the September 7, 1999 blood collection after being advised and having an opportunity to refuse to consent. The court further found that the defendant's May 16, 2002 consent was also voluntarily, knowingly, and intelligently made. In so finding, the court found the defendant's testimony incredible but accredited the testimony of the officer who witnessed the defendant sign the 2002 consent form.

In the instant appeal, the defendant challenges the trial court's admission of his DNA evidence on the basis that the evidence was collected in contravention of his constitutional rights against unreasonable searches and seizures and his sentence as being imposed in violation of his right to trial by jury. Based on the following analysis, we affirm the lower court's admission of evidence and the defendant's sentence.

## Suppression of DNA Evidence

The defendant argues that the trial court erroneously admitted the DNA profiles generated from his illegally obtained blood samples. Specifically, the defendant argues that his blood samples were collected in violation of his rights against unreasonable searches and seizures and that this evidence was the sole basis for his convictions. The defendant avers that the collection of blood samples and subsequent analysis is a search and seizure that falls within the purview of Fourth Amendment protection and that the defendant's blood sample was collected without probable cause, individualized suspicion, or in furtherance of any "special needs," thus violating his constitutional protection. The defendant also contends that his consent to both of these searches and seizures was ineffectual because his consent to the 1999 blood collection was made under duress and

_____

[3](...continued)
defendant's signature, despite the defendant's assertions to the contrary.

threat of disciplinary action if he refused to consent and because his 2002 consent was made after being detained for 12 hours without counsel, under duress by threats to obtain a warrant for the blood collection if the defendant refused to consent. In response, the state counters, *inter alia*, that the defendant knowingly, intelligently, and voluntarily consented to both blood collections.

A trial court's findings of fact made in relation to a suppression hearing are binding upon this court unless the evidence contained in the record preponderates against them. *State v. Ross*, 49 S.W.3d 833, 839 (Tenn. 2001). Moreover, the trial court, as the trier of fact, is able to assess the credibility of the witnesses, determine the weight and value to be afforded the evidence, and resolve any conflicts in the evidence. *State v. Odom*, 928 S.W.2d 18, 23 (Tenn. 1996). On appeal the prevailing party is entitled to the strongest legitimate view of the evidence and all reasonable inferences drawn therefrom. *State v. Hicks*, 55 S.W.3d 515, 521 (Tenn. 2001). The defendant, as the nonprevailing party, has the burden of establishing that the evidence contained in the record preponderates against the findings of fact made by the trial court. *Braziel v. State*, 529 S.W.2d 501, 506 (Tenn. Crim. App. 1975). However, this court is not bound by the trial court's conclusions of law. *State v. Simpson*, 968 S.W.2d 776, 779 (Tenn. 1998). We review *de novo* the application of the law to the trial court's findings of fact. *State v. Daniel*, 12 S.W.3d 420, 423 (Tenn. 2000).

"According to both the Fourth Amendment and [A]rticle I, § 7 of the Tennessee Constitution, 'a warrantless search or seizure is presumed unreasonable, and evidence discovered as a result thereof is subject to suppression unless the State demonstrates that the search or seizure was conducted pursuant to one of the narrowly defined exceptions to the warrant requirement.'" *See State v. Randolph*, 74 S.W.3d 330, 334 (Tenn. 2002). It is well settled that a search conducted pursuant to a voluntary consent is an exception to the warrant requirement. *State v. Bartram*, 925 S.W.2d 227, 230 (Tenn. 1996) (citing *Schneckloth v. Bustamonte*, 412 U.S. 218, 93 S. Ct. 2041 (1973)).

"[T]o pass constitutional muster, consent to search must be unequivocal, specific, intelligently given, and uncontaminated by duress or coercion." *State v. Brown*, 836 S.W.2d 530, 547 (Tenn. 1992). The question whether the appellant voluntarily consented to the search is a question of fact which focuses upon the totality of the circumstances. *Schneckloth*, 412 U.S. at 248-49. The following factors are used to evaluate the voluntariness of the consent: (1) whether the defendant is in custody; (2) the length of detention prior to the giving of consent; (3) the presence of coercive police procedures; (4) the defendant's awareness of the right to refuse to consent; (5) the defendant's age, education, and intelligence; (6) whether the defendant understands his constitutional rights; (7) the extent of the defendant's prior experience with law enforcement; and (8) whether the defendant was injured, intoxicated, or in ill health. *See, e.g., State v. Carter*, 16 S.W.3d 762, 769 (Tenn. 2000). Moreover, the state must show "more than acquiescence to a claim of lawful authority." *Bumper v. North Carolina*, 391 U.S. 543, 549, 88 S. Ct. 1788 (1968). The burden of proof rests upon the state to show, by a preponderance of the evidence, that the consent to a warrantless search was given freely and voluntarily. *Id.* at 548.

In the instant case, we hold that the evidence does not preponderate against the trial court's determination that the defendant's 1999 and 2002 consents were valid. The trial court found that the defendant consented to provide a blood sample in 1999 after being advised of the procedure and his right to consent or refuse:

> As to the issue dealing with the biological specimen that was taken while this Defendant was in the Tennessee State Penitentiary, I note two or three things. It was very clear that the individuals, as Mr. Transou also testified to, are brought in a group. It might be 10, it might be 20 or somewhere in between, and they are advised of the procedure. The procedure under which Mr. Transou was taken in dealt with this statute requiring DNA analysis, but it's very clear from the consent forms, 2A and 2B, let's talk about 2A first, that it was a consent for DNA analysis. It does state – set forth the statute and the consequences of not giving it and the requirement of the law to give it, but it also clearly has the provision for the defendant to refuse to participate in the testing process, even though there may be consequences, as the Defendant testified to. But the prior witnesses testified that this is explained, including the right to refuse and this Defendant did – as he's testified, this is his signature. He did sign the form on September the 7th of '99 giving consent to take the biological specimen. He had a chance to refuse. The only thing that concerns the court is it's being taken under the circumstances as if that statute required it. I note that as a similar situation on this August the 9th of 2000[sic]. Again, the same type form, consent for DNA analysis, same type [sic] circumstances, again the Defendant given an opportunity to refuse it but didn't. He has his own explanation as to why he didn't refuse it and that's that he would suffer consequences if he didn't, but he is well experienced in the TDOC system, in the way it operates. He even testified he knew when the law [requiring a biological specimen for DNA analysis] took effect. I find that he freely, voluntarily and intelligently knew what he was doing at the time he signed the form giving consent for that specimen on both those occasions, after being given the opportunity to refuse.

The defendant challenges these findings by arguing that he signed his 1999 consent form under duress. At his suppression hearing, the defendant testified that he was aware that there could be negative consequences if he chose to refuse to consent to the blood collection, and therefore he did not have an actual choice regarding whether to submit to the procedure. However, TDOC agents informed the defendant of the blood collection process and explained the consent form to the defendant. The consent form itself indicates that only those who have been convicted of a felony offense on or after July 1, 1998 are required to provide a biological specimen for DNA analysis. The

form also contains three signature lines. A signature on one line indicates that the undersigned consents to the blood collection; a signature on a second line indicates that the undersigned refuses to consent to the blood collection; a signature on a third line indicates that the undersigned has read and understands the contents of the form. The defendant's two signatures reflect that he consented to the blood collection and that he had read the entire form and understood its contents. Thus, he was provided with an opportunity to refuse to consent and did not do so. Any threat of future disciplinary action that the defendant believed would befall him if he refused to consent to the blood collection did not equate to eliminating his right to refuse. *See Brown,* 836 S.W.2d at 547 (signature on a consent form that referenced the defendant's right to refuse validated the resulting search); *cf. Bumper,* 391 U.S. at 550, 88 S. Ct. at 1792 (holding that a defendant's consent to search was invalid when the defendant consented after police claimed to have a warrant to search the defendant's home because the police action conveyed that the defendant had "no right to resist the search").

Furthermore, we find that the record does not preponderate against the trial court's finding that the defendant's consent to allow police to collect his blood in 2002 was valid, as well. At the suppression hearing, the defendant claimed that he did not sign the 2002 consent form. However, the interviewing police officer testified that he witnessed the defendant sign this form, and the trial court specifically accredited his testimony and discredited the defendant's testimony. *See Odom,* 928 S.W.2d at 23 (trial court is in the best position to assess the credibility of the witnesses). Furthermore, after noting the court's familiarity with the defendant's signature and comparing the signature on the consent form to known exemplars of the defendant's signature, the trial court found that the signature on the consent form was indeed the defendant's signature. Accordingly, the court found that the defendant's consent was voluntarily and intelligently made. The evidence in the record does not preponderate against this finding.

Thus, examining the totality of the circumstances, we hold that the record supports the finding that the defendant knowingly, intelligently, and voluntarily consented to both blood sample collections.

<u>Violation of Right to Jury Trial</u>

The defendant next challenges his sentence on the basis that the trial court erroneously applied enhancement factors to his sentence in violation of his constitutional right to trial by jury. Specifically, the defendant contends that pursuant to *Blakely v. Washington*, 542 U.S. __, 124 S. Ct. 2531 (2004), several of the enhancement factors require a jury finding of applicability. However, our Tennessee Supreme Court has recently held that notwithstanding the United States Supreme Court's holding in *Blakely*, the Tennessee sentencing structure does not run afoul of the Sixth Amendment. *State v. Gomez*, __ S.W.3d __, No. M2002-01209-SC-R11-CD, slip op. at 27 (Tenn. Apr. 15, 2005), *petitions for reh'g denied*, (May 2005). Accordingly, the defendant's allegation of error lacks merit.

In conclusion, none of the defendant's allegations merit relief, and therefore, the defendant's convictions and sentence are affirmed.

_____
JAMES CURWOOD WITT, JR., JUDGE