# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### April 21, 2010 Session

## STATE OF TENNESSEE v. JEFFERY LEE ARNOLD

**Direct Appeal from the Circuit Court for Franklin County**
**No. 18202      J. Curtis Smith, Judge**

---

**No. M2009-01468-CCA-R3-CD - Filed July 26, 2010**

---

The defendant, Jeffrey Lee Arnold, pled guilty to simple possession of marijuana, a Class A misdemeanor, but reserved a certified question for appeal. The question presented is whether law enforcement officers who entered the defendant's house and discovered the marijuana forming the basis for the charge in this cause, had the right to enter under the Fourth Amendment to the United States Constitution and Article I, section 7 of the Tennessee Constitution. After reviewing the record, we conclude that the marijuana was lawfully seized from the defendant, and we affirm the judgment from the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

JOHN EVERETT WILLIAMS, J., delivered the opinion of the court, in which DAVID H. WELLES and THOMAS T. WOODALL, JJ., joined.

Paul Cross, Monteagle, Tennessee, for the appellant, Jeffery Lee Arnold.

Robert E. Cooper, Jr., Attorney General and Reporter; Cameron L. Hyder, Assistant Attorney General; J. Michael Taylor, District Attorney General, and William Copeland, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

The facts reveal that the defendant was arrested after two officers, who were dispatched to his residence to investigate a domestic situation, saw marijuana and other drug paraphernalia in plain view within the defendant's residence. The defendant, who conceded that the officers had the right to enter his residence initially, contends that the officers had no right to re-enter after all reason to suspect exigent circumstances were gone. The State, on the other hand, relies on the facts that the officers were lawfully on the premises when they saw the marijuana and that the marijuana was lawfully seized because it was in plain

view. We agree with the State.

During the hearing on the Motion to Suppress, both officers dispatched to the defendant's residence testified. Officer Tim Prater stated that, on April 12, 2008, he was employed with the Decherd Police Department and was dispatched to the defendant's residence after 9-1-1 received a call that a female was being held hostage against her will. Officer Prater said that both he and Officer Dempsey arrived at the defendant's residence, approached the door, and knocked. Officer Prater said that, through the window, he saw the defendant walking to the bathroom, holding shotgun shells and a green, leafy material in his hand. He saw the defendant flush most of the green, leafy material down the toilet. The defendant then came to the door. As he began to interview the defendant, Officer Prater heard a female inside the residence yell, "I'm in here, help." While Officer Prater remained at the door with the defendant, Officer Dempsey entered the residence and spoke to the female. Upon his return, Officer Prater entered the residence to speak to the female. There he saw a green, leafy material laying on the sink and a hemostat, rolling paper, and more of the green, leafy material laying on the coffee table in the living room where he was interviewing the female. He stated that everything was in plain view and that, based upon his training and service, he felt that the green, leafy material was marijuana. The Tennessee Bureau of Investigation later confirmed that it was marijuana.

Officer Dempsey's testimony mirrored that of Officer Prater. He said he was dispatched by 9-1-1 to the defendant's residence to investigate whether a woman was being held against her will. He and Officer Prater arrived, went to the door, and knocked. The bathroom window was beside the door, and they watched the defendant walk into the bathroom with shotgun shells and marijuana in his hand. The defendant flushed most of the marijuana before he opened the door. Officer Dempsey then heard a female voice say, "I'm in here, help." He entered and spoke to her before he returned to the porch and reported what he saw to Officer Prater. He told Officer Prater that the female had been drinking and was hysterical, crying, and disoriented.

In *State v. Preston*, 759 S.W.2d 647 (Tenn. 1988), our supreme court made explicit to the bench and bar exactly what the appellate courts require as prerequisites to the consideration of the merits of a certified question of law. These requirements are as follows:

> Regardless of what has appeared in prior petitions, orders, colloquy in open court or otherwise, the final order or judgment from which the time begins to run to pursue a T.R.A.P. 3 appeal must contain a statement of the dispositive certified question of law reserved by [the] defendant for appellate review and the question of law must be stated so as to clearly identify the scope and the limits of the legal issue reserved. For example, where questions of law involve

-2-

the validity of searches and the admissibility of statements and confessions, etc., the reasons relied upon by [the] defendant in the trial court at the suppression hearing must be identified in the statement of the certified question of law and review by the appellate courts will be limited to those passed upon by the trial judge and stated in the certified question, absent a constitutional requirement otherwise. Without an explicit statement of the certified question, neither the defendant, the State nor the trial judge can make a meaningful determination of whether the issue sought to be reviewed is dispositive of the case. . . . Also, the order must state that the certified question was expressly reserved as part of a plea agreement, that the State and the trial judge consented to the reservation and that the State and the trial judge are of the opinion that the question is dispositive of the case. . . . No issue beyond the scope of the certified question will be considered.

*Id.* at 650 (emphasis added); *see also State v. Caldwell*, 924 S.W.2d 117, 118 (Tenn. Crim. App. 1995). Failure to properly reserve a certified question of law pursuant to *Preston* will result in the dismissal of the appeal. *State v. Pendergrass*, 937 S.W.2d 834, 838 (Tenn. 1996). The defendant followed all procedural requirements, and this appeal is properly before the court.

In reviewing a trial court's denial of a motion to suppress, this court looks to the evidence and facts accredited by the trial court which are most favorable to the State as the prevailing party. *State v. Daniel*, 12 S.W.3d 420, 423 (Tenn. 2000). The appealing party bears the burden of demonstrating that the evidence preponderates against the trial court's findings. *State v. Harts*, 7 S.W.3d 78, 84 (Tenn. Crim. App. 1999). Findings of fact made by the trial judge on a motion to suppress are conclusive and are afforded the weight of a jury verdict, and this court may not set aside the trial court's decision unless the evidence contained within the record preponderates against the trial court's findings. *State v. Jackson*, 889 S.W.2d 219, 222 (Tenn. Crim. App. 1993).

The Fourth Amendment to the United States Constitution, made applicable to the states through the Fourteenth Amendment, provides in part that "[t]he rights of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." Similarly, Article 1, section 7, of the Tennessee Constitution, in part, provides "[t]hat the people shall be secure in their persons, houses, papers and possessions, from unreasonable searches and seizures." "[U]nder both the federal and state constitutions, a warrantless search or seizure is presumed unreasonable, and evidence discovered as a result thereof is subject to suppression unless the State demonstrates that the search or seizure was conducted pursuant to one of the narrowly defined exceptions to the warrant requirement." *State v. Yeargan*, 958 S.W.2d 626, 629 (Tenn. 1997) (citing *Coolidge*

*v. New Hampshire*, 403 U.S. 443, 454-55 (1971); *State v. Bartram*, 925 S.W.2d 227, 229-30 (Tenn. 1996)).

The burden is on the State to demonstrate that one of the exceptions to the warrant requirement was applicable at the time of the search or seizure, one of which is exigent circumstances. *Id.* The State bears the burden of demonstrating that exigent circumstances exist to overcome the presumption of unreasonableness that attaches to all warrantless home entries. *Welsh v. Wisconsin*, 466 U.S. 740, 750 (1984). An objective standard is used to determine the reasonableness of the officer's belief that an emergency situation existed at the moment of entry. *Terry v. Ohio*, 392 U.S. 1, 21-22 (1968). The proper inquiry is whether the facts available to the officer at the moment of entry would "warrant a man of reasonable caution in the belief" that the action taken was appropriate. *Carroll v. United States*, 267 U.S. 132, 162 (1925). The reasonableness of that belief must be judged on the basis of the officer's knowledge at the time he or she entered a defendant's residence. *People v. Thompson*, 770 P.2d 1282, 1285 (Colo. 1989) (citing *People v. Malczewski*, 744 P.2d 62, 66 (Colo. 1987)). In determining whether the officer acted reasonably, this court must consider the totality of the circumstances, including the personal observations of the trained police officer and the rational inferences and deductions therefrom. *State v. Watkins*, 827 S.W.2d 293, 294 (Tenn. 1992).

The plain view doctrine provides that, under certain circumstances, the police may seize evidence in plain view without a warrant. The plain view doctrine requires proof that: (1) the objects seized were in plain view; (2) the viewer had a right to be in position for the view; (3) the seized object was discovered inadvertently; and (4) the incriminating nature of the object was immediately apparent. *State v. Hawkins*, 969 S.W.2d 936 (Tenn. Crim. App. 1997). Further, under the federal constitution, prerequisites to the application of the plain view doctrine include: (1) the officer did not violate constitutional mandates in arriving at the location from which the evidence could plainly be seen; (2) the officer had a lawful right of access to the evidence; and (3) the incriminating character of the evidence was "immediately apparent," i.e., the officer possessed probable cause to believe that the item in plain view was evidence of a crime or contraband. Accordingly, when an officer enters private premises pursuant to exigent or emergency circumstances, the officer may generally seize any apparently incriminating items located on the premises in plain view. *State v. Coulter*, 67 S.W.3d 3, 43 (Tenn. Crim. App. 2001).

Here, the trial court found that exigent circumstances existed to support the officers' entry into the defendant's residence. After being summoned to the residence by a female who expressed some alarm, the officers observed the defendant carrying shotgun shells and marijuana. The officers saw the marijuana and drug paraphernalia in plain view through the bathroom window and on a table while they were speaking to the female inside the residence.

Officer Prater remained outside with the defendant until after Officer Dempsey had entered the residence, spoke to the female, and returned. In furtherance of the investigation, Officer Prater decided to speak to the female to get her side of the story. Upon entering, he observed and seized the marijuana and other items that were the basis of the charges. The officers were still in the process of investigating the incident for which they were summoned to the residence.

Having concluded that the officers were lawfully present based on exigent circumstances, the trial court found that the seized items were in plain view. The crux of the defendant's argument is that the entry into the home by Officer Prater was unlawful because any reason to suspect exigent circumstances was gone. However, under the facts of this case, the actions of both officers were reasonable and lawful. Here, both officers were legally on the scene. The mere fact that Officer Dempsey located the female in the house and that she did not appear to be injured, physically restrained, or in need of emergency medical attention, did not negate the need for further investigation by Officer Prater. While conducting an interview with the female, Officer Prater inadvertently discovered and then seized evidence of a crime that was in his plain view and of which the incriminating nature was immediately apparent.

Conclusion

Based on the foregoing and the record as a whole, we affirm the judgment from the trial court.

_____
JOHN EVERETT WILLIAMS, JUDGE