# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### March 8, 2011 Session

## STATE OF TENNESSEE v. CHARLES H. VIRES, JR.

**Appeal from the Circuit Court for Maury County**
**No. 2010CR19565     Robert Lee Holloway, Jr., Judge**

---

**No. M2010-01004-CCA-R3-CD - Filed September 26, 2011**

---

The State appeals the Maury County Circuit Court's granting of the Defendant's motion to suppress evidence obtained during a sobriety checkpoint. The State claims that the trial court erred by concluding that the Defendant was unreasonably seized at the checkpoint due to the failure of the advance publicity to comply with Tennessee Department of Safety General Order 410-1. We reverse the judgment of the trial court and remand the case for further proceedings.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Reversed;**
**Case Remanded**

JOSEPH M. TIPTON, P.J., delivered the opinion of the Court, in which JOHN EVERETT WILLIAMS, and NORMA MCGEE OGLE, JJ., joined.

John Russell Parkes, Columbia, Tennessee, for the appellee, Charles H. Vires, Jr.

Robert E. Cooper, Jr., Attorney General and Reporter; Mark A. Fulks, Senior Counsel; Mike Bottoms, District Attorney General; and David Cruz, Assistant District Attorney General, for the appellant, State of Tennessee.

## OPINION

At the pretrial hearing on the Defendant's motion to suppress, the Defendant conceded that his motion was based on the single issue of whether the police provided sufficient advance notice of the checkpoint. The hearing was "solely limited" to that issue. Tennessee Highway Patrol Officer Chad Smith testified that on July 31, 2009, the Defendant was stopped at a sobriety checkpoint conducted on Highway 50 East in Maury County. He said

that the police provided advance notice of the checkpoint to the <u>Columbia Daily Herald</u> newspaper and that an article providing notice of the checkpoint was printed on July 23, 2009. The article was admitted into evidence. It stated:

> The Tennessee Highway Patrol will be conducting roadside sobriety checkpoints in Maury County later this month.
>
> According to a press release, troopers will be set-up at various checkpoints throughout the county on July 31.
>
> "The Tennessee Highway Patrol has found these roadside sobriety safety checkpoints to be an effective means of enforcing the DUI laws of Tennessee while ensuring the protection of all motorists," the press release states.

Officer Smith was not aware of any other advance notice provided to the public. He said the police warned approaching motorists of the checkpoint using orange signs, traffic cones with flashing lights, emergency lights on patrol cars, and reflective traffic vests.

On cross-examination, Officer Smith testified that Captain Steve Hazard submitted a request to the Department of Safety to conduct the checkpoint three miles east of mile marker nineteen on Highway 50 and that Captain Hazard received approval to conduct the checkpoint. He agreed that the Department of Safety issued General Order 410-1 and that the order established the proper procedure to be followed by the Tennessee Highway Patrol when conducting a sobriety checkpoint. He agreed the order stated that the local district attorney and local law enforcement should be informed of the checkpoint and that written notification of the checkpoint should be provided to local news agencies, listing the date and county in which the checkpoint would be held, as well as the general location and approximate time of the checkpoint. He did not know if District Attorney Mike Bottoms was notified. He said local law enforcement officers were present at the checkpoint. He said the press release published in the <u>Columbia Daily Herald</u> did not list the general location of the checkpoint.

On redirect examination, Officer Smith testified that the checkpoint was conducted at the location and time requested by Captain Hazard. He said numerous law enforcement agencies were present at the checkpoint.

On recross-examination, Officer Smith agreed that General Order 410-1 contained a sample press release used to notify local media of a checkpoint. He did not have anything

in his file indicating that the Tennessee Highway Patrol completed the sample press release or identified a specific location for the checkpoint within Maury County.

The trial court found that the checkpoint was not conducted in accordance with the predetermined guidelines listed in General Order 410-1 because the public did not receive advance notice of the general location of the checkpoint or the approximate time it would be conducted. The trial court concluded that the failure of the advance notice to comply with General Order 410-1 rendered the checkpoint an unreasonable seizure under Article I, Section 7 of the Tennessee Constitution and granted the Defendant's motion to suppress the evidence obtained at the checkpoint. This appeal followed.

The State claims that the trial court erred by concluding that the Defendant was unreasonably seized at the checkpoint because the advance publicity did not comply with General Order 410-1. The State argues that this single factor was not dispositive of the reasonableness of the roadblock, that the trial court's suppression order was improperly based upon a single factor, and that the failure of the advance notice to comply with General Order 410-1 does not justify suppression of the evidence when the checkpoint was otherwise constitutional. The Defendant claims that the trial court properly concluded that the notice published in the Columbia Daily Herald did not comply with the predetermined guidelines listed in General Order 410-1 and thus rendered the checkpoint an unconstitutional seizure. We conclude that the trial court erred by not considering each of the factors enumerated in State v. Downey, 945 S.W.2d 102 (Tenn. 1997), and State v. Hicks, 55 S.W.3d 515 (Tenn. 2001), in assessing the overall reasonableness of the checkpoint and whether genuine limitations were placed on the discretion of the officers in the field.

A trial court's factual findings on a motion to suppress are conclusive on appeal unless the evidence preponderates against them. State v. Odom, 928 S.W.2d 18, 23 (Tenn. 1996); State v. Jones, 802 S.W.2d 221, 223 (Tenn. Crim. App. 1990). Questions about the "credibility of the witnesses, the weight and value of the evidence, and resolution of conflicts in the evidence are matters entrusted to the trial judge as the trier of fact." Odom, 928 S.W.2d at 23. The prevailing party is entitled to the strongest legitimate view of the evidence and all reasonable inferences drawn from that evidence. Hicks, 55 S.W.3d at 521. The application of the law to the facts as determined by the trial court is a question of law, which is reviewed de novo on appeal. State v. Yeargan, 958 S.W.2d 626, 629 (Tenn. 1997).

The Fourth Amendment to the United States Constitution protects against unreasonable searches and seizures, and "'article 1, section 7 [of the Tennessee Constitution] is identical in intent and purpose with the Fourth Amendment.'" Downey, 945 S.W.2d at 106 (quoting Sneed v. State, 423 S.W.2d 857, 860 (1968)). A sobriety checkpoint can constitute a reasonable seizure if "it is established and operated in accordance with predetermined

operational guidelines and supervisory authority that minimize the risk of arbitrary intrusion on individuals and limit the discretion of law enforcement officers at the scene." Downey, 945 S.W.2d at 104. See also Michigan v. Sitz, 496 U.S. 444, 450-55 (1990). The State bears the burden of showing that the government roadblock was reasonable. Hicks, 55 S.W.3d at 527, 535 (citing State v. Bartram, 925 S.W.2d 227, 230 (Tenn. 1996)).

The "most important attribute of a reasonable roadblock is the presence of genuine limitations upon the discretion of the officers in the field." Id. at 533 (citing Downey, 945 S.W.2d at 110-12). The State must establish that (1) an authority superior to the officers in the field established the time and location of the roadblock and (2) the field officers conducted the roadblock according to "neutral standards previously fixed by administrative decision or regulation." Id. The absence of either of these mandatory factors renders a roadblock unconstitutional per se. Id. Four additional factors minimize the risk of an arbitrary intrusion during a roadblock:

> (1) stopping all cars traveling in both directions, unless congested traffic requires permitting motorists to pass through;
>
> (2) taking adequate safety precautions, such as warning approaching motorists of the roadblock and stopping cars only in a safe and visible area;
>
> (3) conducting the roadblock with uniformed officers and marked patrol cars with flashing emergency lights; and
>
> (4) providing advanced publicity of the roadblock to the public at large, separate from, and in addition to, any notice warnings given to approaching motorists.

Id. at 533 (citing Downey, 945 S.W.2d at 110-12). "Although the absence of any one of these factors does not necessarily invalidate a roadblock, they each weigh heavily in determining the overall reasonableness of the checkpoint." Id. No single factor is dispositive of the issue, and a roadblock can be upheld despite a factor weighing against the State. Downey, 945 S.W.2d at 110; see also State v. Sherman Boddie, No. W2007-00685-CCA-R3-CD, Tipton County, slip op. at 4 (Tenn. Crim. App. Dec. 11, 2007) (holding that lack of advance publicity did not invalidate a sobriety roadblock conducted by the Tennessee Highway Patrol and governed by General Order 410-1 when the State proved the existence of both mandatory Downey/Hicks factors and three of the four remaining factors beyond a reasonable doubt). "Instead, the overriding question is whether the roadblock was established and operated in a constitutionally reasonable manner that

minimized the intrusion on individuals and limited the discretion afforded to officers at the scene." Downey, 945 S.W.2d at 110.

Preliminarily, we note that although the State failed to carry its burden of proof at the hearing on the Defendant's motion to suppress, such a failure can be attributed to the instructions of the trial court. At the hearing, the Defendant conceded that the police stopped all cars traveling in both directions, took adequate safety precautions, and conducted the roadblock using uniformed officers and marked patrol cars with flashing emergency lights. The Defendant agreed with the trial court that he intended to rely solely on the lack of advance publicity to support his motion. After the State said that it was "satisfactory" for the Defendant to rely on this factor during the hearing, the trial court stated that the hearing would "focus" on the issue of advance publicity. The State then called Officer Smith to the stand and attempted to "present every single step" of the checkpoint to establish its validity, but was interrupted when the trial court stated, "My understanding is that [the] motion to suppress does not involve 1, 2, or 3 at this time." When the State agreed that the Defendant's motion was focused on the issue of advance publicity, the trial court stated, "Okay. . . this motion is solely limited to No. 4 or D in your case." The State complied with the trial court's instructions and did not attempt to present further evidence of the mandatory Downey/Hicks factors or of three of the four remaining factors. The Defendant did not concede either of the mandatory factors from Downey and Hicks. See Hicks, 55 S.W.3d at 533. Although Officer Smith testified during cross-examination that a superior authority established the time and location of the roadblock, no proof was presented regarding whether the field officers conducted the roadblock according to "neutral standards previously fixed by administrative decision or regulation." Id.

We agree with the trial court's finding that the advance notice of the checkpoint did not comply with General Order 410-1 because it did not list the general location of the checkpoint or the approximate time it would be conducted. We disagree that this single shortcoming necessarily rendered the checkpoint an unconstitutional seizure. The insufficient advance notice weighs against the overall reasonableness of the checkpoint, but it does not necessarily invalidate the checkpoint. The presence or absence of publicity is a factor to be considered when assessing the reasonableness of a roadblock but is not dispositive of the issue. We conclude that the trial court erred by not considering all relevant factors in determining the overall reasonableness of the checkpoint and whether the checkpoint was conducted in accordance with the mandatory requirements of Downey and Hicks.

With regard to the State's claim that the failure of the advance notice to comply with General Order 410-1 does not justify suppression of the evidence when the checkpoint was otherwise constitutional, we reiterate that the lack of sufficient advance notice weighs against

the overall reasonableness of the checkpoint. Although compliance with the requirements of <u>Downey</u> and <u>Hicks</u>, not General Order 410-1, governs the constitutionality of the roadblock, the failure of the notice to comply with General Order 410-1 is evidence of a lack of administrative or supervisory decision making. <u>See</u> <u>Downey</u>, 945 S.W.2d at 111 n.8; <u>Hicks</u>, 55 S.W.3d at 535 n.11.

We caution that our holding does not condone the Tennessee Highway Patrol's failure to provide sufficient advance notice in compliance with its own guidelines. If incidents of insufficient advance notice continue to occur, the circumstances may render a checkpoint invalid and justify exclusion of evidence.

In consideration of the foregoing and the record as a whole, we reverse the trial court's order granting the motion to suppress and remand the case for further proceedings.

_____
JOSEPH M. TIPTON, PRESIDING JUDGE