IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs February 9, 2016

## STATE OF TENNESSEE v. JONATHAN CASEY BRYANT

**Appeal from the Circuit Court for Warren County
No. F-13763     Larry B. Stanley, Jr., Judge**

_____

**No. M2015-00938-CCA-R3-CD – Filed April 5, 2016**

_____

The defendant, Jonathan Casey Bryant, pleaded guilty in the Warren County Circuit Court to promoting the manufacture of methamphetamine, reserving as a certified question of law whether the evidence obtained following a traffic stop should have been suppressed because it arose from his illegal detention. Following our review, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

ALAN E. GLENN, J., delivered the opinion of the court, in which JAMES CURWOOD WITT, JR., and ROBERT L. HOLLOWAY, JR., JJ., joined.

Felicia B. Walkup, McMinnville, Tennessee, for the appellant, Jonathan Casey Bryant.

Herbert H. Slatery III, Attorney General and Reporter; Sophia S. Lee, Senior Counsel; Lisa Zavogiannis, District Attorney General; and Thomas J. Miner, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

## FACTS and PROCEDURAL HISTORY

On June 23, 2012, the defendant was riding as a passenger in a vehicle driven by Charleston Ortega when Sergeant Ben Cantrell of the McMinnville Police Department, who was familiar with both the defendant and Mr. Ortega from their involvement in the production of methamphetamine and knew that Mr. Ortega had an outstanding arrest warrant, spotted them in the vehicle and initiated a traffic stop. Mr. Ortega fled when Sergeant Cantrell attempted to arrest him, but the defendant remained at the scene, was detained in handcuffs by Sergeant Cantrell, and gave consent to the officer to search a

safe inside the vehicle, which he said he had just sold to a friend. Sergeant Cantrell found items used in the manufacture of methamphetamine inside the safe and inside the vehicle itself. The defendant was arrested and subsequently indicted for initiating the process intended to result in the manufacture of methamphetamine, promoting the manufacture of methamphetamine, and possession of drug paraphernalia.

Following the denial of his motion to suppress the results of the search, the defendant pled guilty on February 6, 2013, to promoting the manufacture of methamphetamine in exchange for the dismissal of the other two counts of the indictment and a four-year sentence as a Range I, standard offender, with 180 days to serve and the remainder of his time on supervised probation. As a condition of his guilty plea, the defendant attempted to reserve a certified question of law regarding the legality of his detention and the subsequent search. On October 3, 2014, this court dismissed the appeal on the basis that the certified question of law had not been properly reserved under Tennessee Rule of Criminal Procedure 37 because, although the judgment form referenced "Exhibit No. 1, . . . at no point d[id] an actual question appear in the record." See State v. Jonathan Casey Bryant, No. M2013-00922-CCA-R3-CD, 2014 WL 4953619, at *1, *3. (Tenn. Crim. App. Oct. 3, 2014), perm. app. denied (Tenn. Feb. 20, 2015).

Our direct appeal opinion dismissing the original appeal contains the following summary of the evidence presented at the suppression hearing:

> During a hearing on the motion, Officer Ben Cantrell, with the McMinnville Police Department, testified that around 11:00 a.m. on June 23, 2012, he observed a vehicle being driven by Charleston Dakota Ortega, and the Defendant was a passenger in that vehicle. The vehicle was packed with personal belongings according to Officer Cantrell, and Officer Cantrell was familiar with both Ortega and the Defendant, knowing their previous involvement with methamphetamine production. Officer Cantrell knew that there was a warrant out for Ortega's arrest, so he initiated a traffic stop by activating his blue lights. As soon as Ortega exited the vehicle, Officer Cantrell attempted to place him under arrest, but Ortega fled on foot. Officer Cantrell began to chase Ortega but decided to return to his unattended patrol car and the Defendant who was still present on the scene. After a conversation with the Defendant, Officer Cantrell placed him in handcuffs, stating to the Defendant that he was only being detained and was not under arrest. Officer Cantrell explained that he did so due to "safety concern[s,]" being there by himself with no other officers to assist him.

Officer Cantrell learned that neither Ortega nor the Defendant were the registered owner of the vehicle. Because the Defendant did not have a driver's license, Officer Cantrell determined that the vehicle would have to be towed. As Officer Cantrell began to inventory the car, he discovered a roll of aluminum foil, arousing his suspicions about the manufacture of methamphetamine. Officer Cantrell also observed a locked safe. He asked the Defendant who the safe belonged to, and the Defendant replied that he had sold the safe to a friend. Officer Cantrell asked the Defendant if he still had the key, to which the Defendant said yes and produced the key from his pants pocket. The Defendant consented to a search of the safe, where Officer Cantrell discovered more materials used in the methamphetamine manufacturing process. Officer Cantrell then placed the Defendant under arrest, and Officer Cantrell estimated that the entire episode lasted about twenty minutes.

Id.

Additional facts provided by Sergeant Cantrell at the suppression hearing include the following:[1] Sergeant Cantrell had previously arrested the defendant while the defendant was driving a stolen vehicle. When he asked the defendant who the owner was of the vehicle he had just stopped in which the defendant was riding as a passenger, the defendant gave him a name other than the registered owner, who was a man named Destry Cobbs. Sergeant Cantrell was familiar with Mr. Cobbs as someone who had also been involved in the manufacture of methamphetamine. He advised the defendant of his rights and informed his mother, who had arrived at the scene, that "if nothing else happen[ed], [the defendant would] be released." He then asked the defendant about the safe. The defendant claimed to have sold the safe to a friend, but he still had a key on his person and produced it out of his pocket. He asked the defendant if he could search the safe, and the defendant consented.

The defendant subsequently filed a petition for post-conviction relief in which he alleged ineffective assistance of counsel based on counsel's failures regarding the certified question of law. The post-conviction court granted his petition and set aside the judgments. On April 8, 2015, the defendant entered into the same plea agreement with the State, this time properly preserving the following certified question of law:

Whether the initial seizure of the Defendant was permissible as a brief investigatory detention based upon reasonable suspicion, and whether any evidence obtained during a later search of the Defendant and of items found

---

[1] We have taken judicial notice of the transcript of the suppression hearing, which was included in the record of the defendant's original appeal.

in the passenger compartment of a vehicle in which the Defendant was a passenger was fruit of the poisonous tree and thus inadmissible.

## ANALYSIS

When this court reviews a trial court's ruling on a motion to suppress evidence, "[q]uestions of credibility of the witnesses, the weight and value of the evidence, and resolution of conflicts in the evidence are matters entrusted to the trial judge as the trier of fact." State v. Odom, 928 S.W.2d 18, 23 (Tenn. 1996). The party prevailing at the suppression hearing is entitled to the strongest legitimate view of the evidence and all reasonable inferences that may be drawn from the evidence. State v. Hicks, 55 S.W. 3d 515, 521 (Tenn. 2011). The findings of a trial court in a suppression hearing are upheld unless the evidence preponderates against those findings. See Odom, 928 S.W.2d at 23. However, the application of the law to the facts found by the trial court is a question of law and is reviewed *de novo*. State v. Walton, 41 S.W.3d 75, 81 (Tenn. 2001); State v. Crutcher, 989 S.W.2d 295, 299 (Tenn. 1999); State v. Yeargan, 958 S.W.2d 626, 629 (Tenn. 1997).

The defendant contends that his consent to search was obtained through an exploitation of his illegal detention, arguing that Sergeant Cantrell lacked either reasonable suspicion or probable cause that he was involved in a crime. The State responds by arguing that under the totality of the circumstances Sergeant Cantrell had reasonable suspicion to believe that the defendant was engaged in criminal activity at the time he was seized. The State further argues that the defendant lacks standing to challenge the searches because he was not the owner of the vehicle and denied ownership of the safe. In the alternative, the State argues that the totality of the circumstances supports a conclusion that the defendant's consent to search was voluntary.

Both the Fourth Amendment to the United States Constitution and article I, section 7 of the Tennessee Constitution protect individuals against unreasonable searches and seizures. See U.S. Const. amend. IV; Tenn. Const. art. I, § 7. "These constitutional provisions are designed to 'safeguard the privacy and security of individuals against arbitrary invasions of government officials.'" State v. Keith, 978 S.W.2d at 865 (quoting Camara v. Municipal Court, 387 U.S. 523, 528 (1967)). A search or seizure conducted without a warrant is presumed unreasonable, and evidence obtained as a result will be suppressed "unless the prosecution demonstrates by a preponderance of the evidence that the search or seizure was conducted pursuant to an exception to the warrant requirement." Id. (citations omitted).

An exception to the warrant requirement exists when an officer has either probable cause, or reasonable suspicion supported by specific and articulable facts, that a criminal

offense has been or is about to be committed. Terry v. Ohio, 392 U.S. 1, 21 (1968); State v. Binette, 33 S.W.3d 215, 219 (Tenn. 2000). Reasonable suspicion is an objective standard and must be determined from the totality of the circumstances. United States v. Cortez, 449 U.S. 411, 417-18 (1981); see Ornelas v. United States, 517 U.S. 690, 696 (1996).

The defendant concedes that Sergeant Cantrell had probable cause to stop the vehicle based on his knowledge of Mr. Ortega's outstanding arrest warrant but argues that the officer lacked either probable cause or reasonable suspicion to detain him, a mere passenger in the vehicle. The trial court made the following findings of fact and conclusions of law regarding the legality of the defendant's detention:

> I think in this instance that the person who had a warrant against them [Mr. Ortega] fled while driving someone else's vehicle which was cram-packed full from top to bottom with personal property and the owner of the vehicle was a convicted felon known to the Sergeant and that both [the defendant and Mr. Ortega] had been involved in methamphetamine manufacturing or trafficking and stolen the vehicle, stolen automobile possession in the past. I think all of that was known to [Sergeant Cantrell] and I think as a totality that adds up to reasonable suspicion.

The record does not preponderate against these findings and conclusions. The defendant argues that Sergeant Cantrell's past dealings with him was insufficient to create an objective justification for reasonable suspicion. However, as noted by the trial court, there were more factors present than just the officer's knowledge of the defendant's criminal history. See State v. Lloyd Andra Webb, No. E2009-02135-CCA-R3-CD, 2011 WL 486850, at *9 (Tenn. Crim. App. Feb. 11, 2011) (observing that while a defendant's nervous behavior, combined merely with an officer's knowledge of the defendant's criminal past, is insufficient for reasonable suspicion to detain a defendant following a traffic stop, "an officer's prior knowledge of a defendant's criminal history or reputation, in addition to nervousness and other factors, can give rise to reasonable suspicion to detain a defendant further") (citations omitted).

Sergeant Cantrell testified as to a number of circumstances that, based on his personal knowledge of the defendant and his experience as a law enforcement officer, formed an objective basis for his reasonable suspicion that the defendant was involved in criminal activity. These included his knowledge of the defendant's criminal history with stolen vehicles and methamphetamine production, Mr. Ortega's flight from the vehicle, the suspiciously "packed" condition of the vehicle, the defendant's having provided a false name as the owner of the vehicle, and the fact that the registered owner of the vehicle was an individual whom he knew to have also been involved in

5

methamphetamine production. We conclude, therefore, that the trial court did not err in finding that the defendant's detention was lawful.

Relying on his contention that the detention was unlawful, the defendant argues that the evidence resulting from the officer's search of the safe must be suppressed under the "fruit of the poisonous tree" doctrine because his consent to search was obtained by exploitation of the illegal detention. We have, however, already concluded that the defendant's detention was lawful based on the officer's reasonable suspicion that the defendant was involved in criminal activity.

It is well-settled that a search conducted pursuant to voluntary consent is an exception to the requirement that searches and seizures be conducted pursuant to a warrant. State v. Bartram, 925 S.W.2d 227, 230 (Tenn. 1996). To satisfy the constitutional reasonableness standard, consent must be "'unequivocal, specific, intelligently given, and uncontaminated by duress or coercion.'" State v. Simpson, 968 S.W.2d 776, 784 (Tenn. 1998) (quoting State v. Brown, 836 S.W.2d 530, 547 (Tenn. 1992)). The question of whether consent was voluntary is determined from the totality of the circumstances. State v. Cox, 171 S.W.3d 174, 183-84 (Tenn. 2005) (citing Schneckloth v. Bustamonte, 412 U.S. 218, 243 (1973)). In assessing the totality of the circumstances, relevant factors to consider are: "(1) [t]ime and place of the encounter; (2) [w]hether the encounter was in a public or secluded place; (3) [t]he number of officers present; (4) [t]he degree of hostility; (5) [w]hether weapons were displayed; (6) [w]hether consent was requested; and (7) [w]hether the consenter initiated contact with the police." Id. at 185 (citation omitted).

We agree with the State that the totality of the circumstances supports a finding that the defendant's consent to search was voluntarily and intelligently given. The entire detention lasted only twenty minutes by Sergeant Cantrell's estimation. In addition, the defendant was asked only once and there was no evidence of any badgering or harassment by the officer. We conclude, therefore, that the trial court properly denied the defendant's motion to suppress the evidence.

## CONCLUSION

Based on the foregoing authorities and reasoning, we affirm the judgment of the trial court denying the motion to suppress.

_____
ALAN E. GLENN, JUDGE